# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **IN RE: HIGHER ONE ONEACCOUNT MARKETING AND SALES PRACTICES LITIGATION** | **No. 3:12-md-2407 (VLB)** |
| | **JURY TRIAL DEMANDED** |

**THIS DOCUMENT RELATES TO:**

*Price, et al. v. Higher One Holdings, Inc., et al.*
**D. Conn. Case No. 3:12-cv-01093-VLB**

*Parker, et al. v. Higher One Holdings, Inc., et al.*
**N.D. Miss. Case No. 1:12-cv-00154-NBB-DAS**
**D. Conn. Case No. 3:12-cv-01788-VLB**

*Kent, et al. v. Higher One Holdings, Inc., et al.*
**M.D. Ala. Case No. 2:12-cv-00712-NHT-TPM**
**D. Conn. Case No. 3:13-cv-00048-VLB**

*Massey, et al. v. Higher One Holdings, Inc., et al.*
**S.D. Ill. Case No. 3:12-cv-01149-MJR-SCW**
**D. Conn. Case No. 3:12-cv-01808-VLB**

*Lanham, et al. v. Higher One Holdings, Inc., et al.*
**W.D. Ky. Case No. 3:12-cv-00693-S**
**D. Conn. Case No. 3:12-cv-01811-VLB**

**JEANETTE PRICE,**
**RHONDA HANNIBAL,**
**BRANDI CRAWFORD,**
**PRINCE KAYWOOD,**
**GAYNELL KAYWOOD,**
**TARSHA CROCKETT,**
**KRISTINE KRIEG,**
**ASHLEY PARKER**
**JOHN BRANDON KENT,**
**BRIANNE ELIZABETH KENT,**
**JONATHAN LANHAM, and**
**LARRY FORMAN**

**v.**

**HIGHER ONE HOLDINGS, INC.,**
**THE BANCORP BANK, and**
**WRIGHT EXPRESS FINANCIAL SERVICES**
**CORPORATION**

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Jeanette Price, Rhonda Hannibal, Brandi Crawford, Prince Kaywood, Gaynell Kaywood, Tarsha Crockett, Kristine Krieg, Ashley Parker, John Brandon Kent, Brianne Elizabeth Kent, Jonathan Lanham, and Larry Forman (collectively, "Plaintiffs"), through their undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

### INTRODUCTION

1.      This is a class action seeking monetary damages, restitution, and declaratory relief from Defendants, Higher One Holdings, Inc., ("Higher One"), The Bancorp Bank ("Bancorp"), and Wright Express Financial Services Corporation ("Wright") (collectively, "Defendants"), arising from their unfair and unconscionable practices of automatically creating bank accounts for college students, depositing students' financial aid funds into Higher One accounts without students' permission, deceptively discouraging students from opting-out of such accounts, and assessing deceptive and unusual bank fees on student accounts.

2.      Higher One, which is not a bank, partnered with Bancorp until May 2012 to provide checking account and debit card services to students.  Higher One currently partners with Wright for these services.[1]

---

[1] The use of the term "Defendants" means Higher One and its banking partner. Before May 2012, "Defendants" means Higher One and Bancorp.  After May 2012, "Defendants" means Higher One and Wright.

3.     In general, Plaintiffs' direct contact is with Higher One, which sent accounts documents, contracts, disclosures, and a debit card to Plaintiffs.  Upon information and belief, it is pursuant to instructions and policies devised in cooperation with Higher One that Bancorp and Wright hold or held Plaintiffs' financial aid funds, issued debit cards, and assessed the bank fees described herein pursuant to instructions and policies devised in cooperation with Higher One.

4.     Higher One has arrangements with over 500 colleges and universities around the country whereby a student's financial-aid refund—the money left over after the school deducts its tuition and fees, which students are to use for things like books and living expenses—is automatically deposited by Defendants into a Higher One bank account linked to a Higher One debit card. These financial aid refunds include scholarship, federal financial aid, and/or loan money (including Title IV, Higher Education Act ("HEA") program funds). Defendants are aware the deposited funds are comprised of financial aid refunds, as they receive the funds directly from colleges and universities.

5.     Defendants thus default students into use of the Higher One account, and force students to affirmatively opt-out of the Higher One account if students would like to deposit their financial aid funds in another bank.

6.     Higher One then uses three tactics to make sure that students do *not* opt-out of this default:  first, it sends students unsolicited and "co-branded" debit cards and accompanying materials, which falsely imply that the Higher One account is endorsed or required by the student's college or university; second,

Higher One, in concert with Wright and Bancorp, intentionally delay access to financial aid funds for students who choose to use other banking providers; third, Higher One conceals the true costs of the Higher One accounts by making its deceptive and incomplete account disclosures difficult to access.

7.      Students may only access their own financial aid funds immediately by <u>not</u> opting-out of the Higher One account that has been created for them. Because, almost by definition, financial aid recipients are dependent on their financial aid money to survive, Defendants coerce students to remain in the default option and use Higher One accounts in order to have immediate access to their funds.

8.      These tactics are extraordinarily successful: Higher One has stated publicly that approximately 80% of students remain in the "default" option. Having secured a captive audience, at least one Defendant[2] then proceeds to assess and collect deceptive, improperly disclosed, and in many cases unavoidable bank fees on these accounts.

9.      Once a student is locked in to a Higher One account, he or she is then assessed unconscionable and unusual bank fees.  These fees are charged to students who can afford them the least.

---

[2] Without the benefit of discovery, Plaintiffs cannot specify which Defendant or Defendants actually perform the task of assessing and collecting the complained-of bank fees.  Where the exact contours of the relationships between named Defendants is unknown to Plaintiffs, Plaintiffs use the terminology "at least one Defendant."

10.   A recent report by the U.S. Public Interest Research Group, "The Campus Debit Card Trap" (attached as Exhibit A), condemns Higher One's activities:

- "Fees can be steep and frequent for students using the university-adopted cards, including a variety of per-swipe fees, inactivity fees, overdraft fees [and] ATM fees[.]"

- "Potentially aggressive marketing tactics can make students captive customers."

- "Access to student financial aid funds placed on debit cards can be subject to limited availability of 'convenient' fee-free ATMs for student loan withdrawals despite U.S. Department of Education rules.  Students end up paying fees to access their aid."

11.   Targeting students with excessive bank fees—and using scarce financial aid money (much of which is taxpayer money) to pay those fees—is unethical, immoral, and contrary to public policy, and makes it more difficult for students to meet legitimate education expenses.  It violates the public policy expressed by various federal Department of Education ("DOE") regulations, including 34 C.F.R. 668.164(c)(3)(iv), which states that regardless of how students receive their financial aid refunds, entities are prohibited from charging a fee for delivering those funds.  It also violates the public policy expressed by the HEA, which limits the use of federal financial aid funds to educational expenses.

12.   As discussed below, students cannot reasonably avoid certain Higher One fees.

- 5-

13.     Many students pay Defendants' unconscionable bank fees with borrowed money, often at 7 percent interest or higher.  Other students receiving grant aid are low-income, with a high level of need.

14.     In 2010 alone, Higher One took in at least $66 million on so-called "convenience fees" charged to students.  Upon information and belief, a large portion of those fees were taxpayer funds designated by the federal government for the strict purpose of meeting the educational needs of low- and middle-income students.

15.     In sum, Defendants collectively delivered a one-two-three punch to Plaintiffs that violated their statutory and common law rights: (1) Defendants forced, or defaulted, Plaintiffs into a Higher One account without students' consent; (2) Defendants made misrepresentations and omissions, and foreclosed other banking options, in order to inhibit Plaintiffs from opting out of that default; and (3) Defendants charged Plaintiffs undisclosed, deceptive, and unconscionable bank fees which violated the purported contract between Plaintiffs and Higher One.

16.     Had Defendants not automatically opened checking accounts on Plaintiffs' behalf, plied them with deceptively co-branded debit cards and associated documents, and failed to adequately disclose account costs, Plaintiffs could have and would have chosen to receive financial aid funds via their existing bank or another bank which offers similar checking services without the unconscionable fees discussed herein—many of which are rarely, if ever, charged by other banks.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action in which some members of the classes are citizens of states different than Defendants.  *See* 28 U.S.C. § 1332(d)(2)(A).  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110a, *et seq.*, for rescission, and for unjust enrichment, conversion, and statutory theft.

18.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391, because Higher One maintains its headquarters in this District and because Defendants have imposed substantial bank fees on consumers by means of a scheme which emanates from this District.  Moreover, the Terms and Conditions imposed by Higher One on accountholders contain a Connecticut choice-of-law provision.

## THE PARTIES

19.    Plaintiff Tarsha Crockett ("Plaintiff Crockett"), a current Higher One account holder, is a citizen of the state of Florida.  Plaintiff Crockett has incurred PIN-Based Transaction Fees, non-Higher One ATM Transaction Fees, and Overdraft Fees.  Plaintiff Crockett was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff Crockett received

a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; and because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

20.     Plaintiff Rhonda Hannibal ("Plaintiff Hannibal"), a current Higher One account holder, is a citizen of the state of North Carolina.  Plaintiff Hannibal has incurred PIN-Based Transaction Fees.  Plaintiff Hannibal was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff Hannibal received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; and because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

21.      Plaintiff Brandi Crawford ("Plaintiff Crawford"), a current Higher One account holder, is a citizen of the state of California.  Plaintiff Crawford has incurred PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees. Plaintiff Crawford was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff Crawford received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; and because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

22.      Plaintiff Prince Kaywood ("Plaintiff P. Kaywood"), a current Higher One account holder, is a citizen of the state of Louisiana.  Plaintiff P. Kaywood has incurred PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees.  Plaintiff P. Kaywood was charged these fees because Defendants opened a Higher One account without his consent, into which his financial aid refund was deposited; because, without requesting it, Plaintiff P. Kaywood received a co-branded, preloaded card from Higher One with "DEBIT" and the name of his

university stamped boldly on the front; because he was forced to visit a Higher One website in order to access financial aid funds that were rightly his; because he was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, he was forced to use non-Higher One ATMs to access his financial aid money; and because he was not properly informed that he was required to use his Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

23.     Plaintiff Gaynell Kaywood ("Plaintiff G. Kaywood"), a former Higher One account holder, is a citizen of the state of Louisiana.  Plaintiff G. Kaywood has incurred PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees.  Plaintiff G. Kaywood was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff G. Kaywood received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; and because she was not properly informed that she was required to use her Higher

One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

24.     Plaintiff Kristine Krieg ("Plaintiff Krieg"), a current Higher One account holder, is a citizen of the state of Washington.   Plaintiff Krieg has incurred both PIN-Based Transaction fees and non-Higher One ATM Transaction Fees.   Plaintiff Krieg was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff Krieg received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; and because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

25.     Plaintiff Ashley Parker ("Plaintiff Parker"), a current Higher One account holder, is a citizen of the state of Mississippi.   Plaintiff Parker has incurred both PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees.   Plaintiff Parker was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was

deposited; because, without requesting it, Plaintiff Parker received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; and because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

26.    Plaintiff John Brandon Kent ("Plaintiff J. Kent"), a former Higher One account holder, is a citizen of the state of Alabama.  Plaintiff J. Kent has incurred both PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees. Plaintiff J. Kent was charged these fees because Defendants opened a Higher One account without his consent, into which his financial aid refund was deposited; because, without requesting it, Plaintiff J. Kent received a co-branded, preloaded card from Higher One with "DEBIT" and the name of his university stamped boldly on the front; because he was forced to visit a Higher One website in order to access financial aid funds that were rightly his; because he was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, he was forced

to use non-Higher One ATMs to access his financial aid money; and because he was not properly informed that he was required to use his Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

27.    Plaintiff Brianne Elizabeth Kent ("Plaintiff B. Kent"), a former Higher One account holder, is a citizen of the state of Alabama.  Plaintiff B. Kent has incurred PIN-Based Transaction Fees, non-Higher One ATM Transaction Fees, and Overdraft Fees.  Plaintiff B. Kent was charged these fees because Defendants opened a Higher One account without her consent, into which her financial aid refund was deposited; because, without requesting it, Plaintiff B. Kent received a co-branded, preloaded card from Higher One with "DEBIT" and the name of her university stamped boldly on the front; because she was forced to visit a Higher One website in order to access financial aid funds that were rightly hers; because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale; and because Defendants unlawfully turned the Higher One card into a credit access device that incurred overdrafts, in violation of DOE regulations.

28.     Plaintiff Jonathan Lanham ("Plaintiff Lanham"), a current Higher One account holder, is a citizen of the state of Kentucky.   Plaintiff Lanham has incurred both PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees.  Plaintiff Lanham was charged these fees because Defendants opened a Higher One account without his consent, into which his financial aid refund was deposited; because, without requesting it, Plaintiff Lanham received a co-branded, preloaded card from Higher One with "DEBIT" and the name of his university stamped boldly on the front; because he was forced to visit a Higher One website in order to access financial aid funds that were rightly his; because he was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, he was forced to use non-Higher One ATMs to access his financial aid money; and because he was not properly informed that he was required to use his Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

29.     Plaintiff Larry Forman ("Plaintiff Forman"), a current Higher One account holder, is a citizen of the state of Kentucky.   Plaintiff Forman has incurred both PIN-Based Transaction Fees and non-Higher One ATM Transaction Fees.  Plaintiff Forman was charged these fees because Defendants opened a Higher One account without his consent, into which his financial aid refund was deposited; because, without requesting it, Plaintiff Forman received a co-branded, preloaded card from Higher One with "DEBIT" and the name of his

university stamped boldly on the front; because he was forced to visit a Higher One website in order to access financial aid funds that were rightly his; because he was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, he was forced to use non-Higher One ATMs to access his financial aid money; and because he was not properly informed that he was required to use his Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale.

30.    Plaintiff, Jeannette Price ("Plaintiff Price"), a former Higher One account holder, is a citizen of the state of Texas.  Plaintiff Price has incurred PIN-Based Transaction Fees, non-Higher One ATM Transaction Fees, Overdraft Fees, and Abandoned Account Fees.  Plaintiff Price was charged these fees because she was provided indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; because, due to the extremely limited number of Higher One ATMs provided, she was forced to use non-Higher One ATMs to access her financial aid money; because she was not properly informed that she was required to use her Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the point of sale; because Defendants unlawfully turned the Higher One card into a credit access device that incurred overdrafts, in violation of DOE regulations; and because Higher One failed to adequately notify Plaintiff

Price that a balance remained in her account or that it would repeatedly charge her inactivity fees on that balance.

31.     Defendant Higher One is, according to its website, "a leading company focused on helping college business offices manage operations and providing enhanced service to students.  Through a full array of services from refunds, payments, electronic billing, payment plans and more, Higher One works closely with colleges and universities to ensure students receive Financial Aid refunds quickly, can pay tuition and bills online, make on-campus and community purchases and learn the basics of financial management."  Higher One is a corporation established under the laws of the state of Delaware, with its principal place of business in New Haven, Connecticut.

32.     Prior to May, 2012, pursuant to an agreement with Higher One, Bancorp, which has over $2 billion in assets, provided Higher One customers Federal Deposit Insurance Corporation ("FDIC")-insured depository services for checking accounts. Bancorp is a corporation established under the laws of the state of Delaware, with its principal place of business in Wilmington, Delaware.

33.     Beginning in May, 2012, pursuant to an agreement with Higher One, Wright, which has over $1.3 billion in assets, provided Higher One customers FDIC-insured depository services for checking accounts.  Wright maintains its headquarters in the state of Utah and is supervised by the FDIC.

## CLASS ALLEGATIONS

34.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the

numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

35.     The proposed Classes are defined as:

All current and former Higher One account holders in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred a PIN-based Transaction Fee, a non-Higher One ATM Fee, or an Overdraft Fee (the "National Class").

All current and former Higher One accountholders who are citizens of Texas, Washington, California, North Carolina, Louisiana, Florida, Mississippi, Alabama, and Kentucky for the purpose of asserting claims under their respective state consumer protection statutes (the "State Subclasses") (*see* Second Claim for Relief, *infra*).

The National Class and the State Subclasses are collectively referred to as the "Classes."

36.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

37.     Excluded from the Classes are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendants' records.

39.     The representative Plaintiffs' claims are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were improperly defaulted into using a Higher One account and then improperly charged bank fees by Higher One.  The representative Plaintiffs, like all Class members, have been damaged by Higher One's misconduct in that they have been forced to use a Higher One account to access financial aid funds, and have been assessed and/or will continue to be assessed unfair and unconscionable bank fees.  Furthermore, the factual basis of Defendants' misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

40.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

41.     Among the questions of law and fact common to the Classes are whether at least one Defendant:

a.     Automatically opens Higher One accounts on behalf of students and deposit financial aid refunds into such accounts without consent;

b.     Without students' consent, mails a pre-loaded, co-branded debit card and associated materials to students, falsely representing that Higher One is endorsed by, or is the preferred banking partner of, a student's college or university;

c.      Deceptively encourages students not to opt-out of their Higher One accounts without adequately disclosing the true nature of those accounts, including unconscionable and unusual usage fees;

d.      Intentionally makes it difficult for students to opt-out of the Higher One account by failing to provide an online "direct deposit" option and otherwise delaying access to financial aid monies for students who choose to use other banking providers;

e.      Imposes contractual forms upon consumers only electronically, and only after a disbursement choice has been made, without providing consumers with the meaningful ability to review or approve the terms of those contracts prior to forcing a student to make a disbursement choice;

f.      Deceives students about, and do not adequately disclose, PIN Transaction Fees by, among other things, labeling the Higher One access device a "debit card" even though a student must use it as a "credit" card to avoid the fee;

g.      Does not provide means by which students can reasonably avoid PIN Transaction Fees;

h.      Violates the contract by charging, in effect, two service fees for every non-Higher One withdrawal;

i.      Does not provide means by which students can reasonably avoid non-Higher One ATM Transaction Fees;

j.      Requires their customers to enter into standardized account agreements which include unconscionable provisions;

   k. **Violates DOE regulations and guidance;**

   l. **Converts money belonging to Plaintiffs and other members of the Classes through their policies and practices;**

   m. **Is unjustly enriched through their policies and practices;**

   n. **Violates the consumer protection acts of Connecticut and/or various states through their policies and practices; and**

   o. **Violates the Electronic Funds Transfer Act and Regulation E.**

 42. **Other questions of law and fact common to the Classes include:**

   a. **The proper method or methods by which to measure damages, and**

   b. **The declaratory relief to which the Classes are entitled.**

 43. **Plaintiffs' claims are typical of the claims of other class members, in that they arise out of Defendants' same wrongful policies and practices of and Higher One's account documents' same or substantially similar unconscionable provisions.  Plaintiffs have suffered the harm alleged herein and have no interests antagonistic to the interests of any other Class member.**

 44. **Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.**

 45. **A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual**

Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendants, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Defendants' misconduct will proceed without remedy.

46.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

**A.    Defendants Obtained Plaintiffs' Sensitive Personal Information Without Consent**

47.     Without Plaintiffs' authorization, Defendants acquired sensitive personal information from Plaintiffs' education and financial records.

48.     Defendants used this information to open bank accounts and distribute pre-loaded debit cards to Plaintiffs.

**B.    Defendants Defaulted Plaintiffs Into Use of a Higher One Account**

49.      Without Plaintiffs' consent, Defendants acquired all financial aid refund money owed to Plaintiffs from Plaintiffs' colleges and universities.  Upon

information and belief, Defendants then opened accounts for each Plaintiff—also without their consent.

50.    Because Defendants automatically opened accounts into which their financial aid money was deposited, Plaintiffs were required to go through Higher One in order to receive <u>any</u> financial aid refund whatsoever.

51.    By opening accounts for Plaintiffs, Defendant therefore created a "default" that Plaintiffs had to "opt-out" of if they were to use a different banking services provider to receive their financial aid money.

52.    Higher One then used three tactics to make sure that Plaintiffs did not opt-out of this default: first, it sent Plaintiffs unsolicited and co-branded debit cards and associated materials; second, it (along with other Defendants) would intentionally delayed access to financial aid funds if Plaintiffs chose to use other banking providers to receive financial aid money; third, it concealed from Plaintiffs the true fees and costs associated with the accounts.

C.    <u>Higher One Sent Plaintiffs Deceptively "Co-Branded" Debit Cards and Associated Materials That Indicated Higher One Was the Required or Preferred Choice of Their Universities</u>

53.    Higher One aggressively markets its services directly to students via email and direct mail without students' consent.

54.    Higher One's June 2010 IPO prospectus describes key components of its strategy to extract fees from students by aggressively marketing them, even prior to the time they set foot on campus:

> Once we enter into a contract with a higher education institution, we begin focusing our marketing effort on the institution's students…

> We work closely with our higher education institutional clients to communicate the benefits of our products and services through school-branded communications and literature in an effort to increase both the number of new OneAccounts and usage of existing OneAccounts . . .

> Typically, we will send information to parents and incoming students soon after their admission applications are accepted by the school and during student orientation.  We generally contact returning students before the beginning of a new semester and place signs in strategic campus locations such as bookstores, student centers, dining halls, athletic facilities and cash dispensers to increase awareness of our products and services . . .

> In an effort to strengthen our relationships with students, we often sponsor and support on-campus events and create a co-branded website with the higher education institutions . . .

55.    Prior to the beginning of a semester, each Plaintiff received in the mail a Higher One debit card prominently emblazoned with the name and logo of Plaintiffs' respective colleges and universities.

56.    Each Plaintiff believed these representations to indicate that his or her school endorsed or required Higher One's checking account as the best or only way to receive financial aid money.

57.    The Higher One debit cards came complete with unique account information and Plaintiffs' sensitive information stored on the card. Accompanying the card, a notice told Plaintiffs that they were required to activate their card to be entitled to receive their financial aid benefits.

58.    Upon information and belief, prior to the beginning of a term, each Plaintiff received an email from Higher One which contained text substantially similar to the following:

> [Your college or university] has partnered with Higher One to provide a new method for receiving financial aid disbursements to all . . .

- 23-

students.  It is called the [name of college] Debit Card.  If you have received your Higher One card and are expecting Financial Aid; please activate the card and choose your disbursement preference right away to avoid any delays to your disbursement.

59.    In such emails, and by use of the term "partnered" among others, Higher One falsely represented to Plaintiffs that the Higher One account was endorsed or required by his or her school as the only or best way to receive their financial aid funds.

60.    Each Plaintiff stayed in the Higher One "default" because, in part, each Plaintiff believed use of the Higher One account was the only or best way to receive financial aid funds disbursed by his or her school.

61.    In fact, federal regulations prohibit an institution of higher education from requiring use of a particular banking account for financial aid funds, and Plaintiffs' colleges and universities **did not** require or endorse use of the Higher One account.

62.    Higher One does not adequately disclose that students may elect to receive their financial aid refund via methods other than a Higher One account.

63.    Plaintiffs were deceived into believing their schools had endorsed the Higher One account as the only or best way to receive their financial aid funds.  Each non-Higher One ATM Fee, PIN-Transaction Fee, and Overdraft Fee discussed below was incurred, at least in part, as a result of this initial deception.

D.    **Higher One Deceptively Discouraged Plaintiffs From Opting-Out of Their Higher One Accounts By Threatening Delayed Access to Financial Aid Money If They Used Options Other Than Higher One**

64.    Plaintiffs were next required to use a Higher One website in order to receive any financial aid refund whatsoever.  The site was co-branded with

Plaintiffs' schools' logos and falsely represented that Higher One was the preferred or required financial aid disbursement and checking account provider.

65.    Plaintiffs did not opt out of the default option because, in part, Defendants would have delayed access to their much-needed financial aid money if Plaintiffs had chosen other options.  Upon information and belief, each Plaintiff received a substantially similar email from Higher One that touted the expediency of its refund, but did not adequately disclose the myriad fees the students would be subject to if they in fact used a Higher One account.

66.    Further, Plaintiffs were each told that they would get their financial aid refunds "immediately" if they choose Higher One and that their financial aid disbursements would be delayed if they opted-out of the Higher One account default for their disbursement.

67.    However, as discussed below, a refund would be "delayed" only because Defendants together designed their disbursement system to make other disbursement options more time-consuming.

68.    In order to access their financial aid funds, Plaintiffs were forced to visit the Higher One website.  Plaintiffs were required to use the 16-digit debit card number that they were sent in the mail to log in.

69.    Plaintiffs were theoretically provided three options for a financial aid distribution, but Defendants ensured the choice was predestined.  The first option was to remain in the Higher One default and receive money immediately.  The second option was for a "direct deposit," which was not "direct" at all, but actually required a student to print out a paper form, fill it out, and mail it in to

Higher One.  Upon information and belief, this option takes approximately one week for a student to receive funds.  The third option is to request a paper check. Upon information and belief, this option takes approximately one month for a student to receive funds.

70.     Disbursement options other than the default Higher One account were not presented equally.

71.     Because, by definition, financial aid recipients are dependent on their financial aid money to survive, Defendants coerce students to remain in the default option and use Higher One accounts in order to have immediate access to their funds.

72.     Plaintiffs each needed their financial aid money quickly.  It was unconscionable, deceptive, and unfair for Defendant to hold Plaintiffs' own financial aid funds hostage for a period of time unless Plaintiffs used a Higher One account for disbursement.

E.      **Defendants Purposely Made It Difficult for Plaintiffs to Opt-Out of the Higher One Account by Foreclosing Other Banking Options**

73.     As discussed above, Higher One did not allow Plaintiffs to choose their electronic disbursement options without undue bias and pressure.

74.     Defendants did not provide an electronic online option for Plaintiffs to deposit their financial aid refunds in another bank of their choosing.  This is despite the fact that in similar electronic payment systems, companies routinely provide an online direct deposit option, and such technology is commonly and cheaply available.  For example, the federal government offers electronic direct deposit options for receipt of Social Security benefits.  Upon information and

belief, Defendants could have easily done so here, but intentionally did not provide that option in order to disincentivize students from choosing other banking options.

75.    Had direct deposit been available as an online option (and thus not come with an artificial time delay), Plaintiffs could have and would have used their existing bank accounts, and accounts at different banks, to deposit their financial aid funds—accounts which would not have come with the unconscionable and unusual fees at least one Defendant charges, as discussed herein.

76.    In other words, at least one Defendant intentionally makes it more difficult for students to deposit their financial aid refunds into accounts at other banks than to follow the default option of using the new bank account opened for them by Higher One.

77.    These policies violate DOE regulations, including, *inter alia*, 34 C.F.R. §668.164(c)(3), which states:

> An institution may establish a policy requiring its students to provide bank account information or open an account <u>at a bank of their choosing</u> as long <u>as this policy does not delay the disbursement</u> [of financial aid funds].

(emphasis added).

78.    A student who complies by designating non-Higher One bank account information suffers a delay in receiving funds, in violation of the above-referenced regulation.

79.    Defendants' tactics are extraordinarily successful.  In practice, most students whose funds are initially deposited into Higher One Accounts end up

receiving their financial aid refund through Higher One. In 2009, for instance, 76 percent of the students at participating colleges ended up banking with Higher One, rather than choosing another bank, according to filings with the Securities and Exchange Commission.

80. In short, Higher One has leveraged its relationship with colleges and universities to make itself essentially the *de facto* or default choice for banking on these campuses.

81. It then uses this advantage to charge students unconscionable and unusual bank fees. Each of the fees incurred by Plaintiffs could not and would not have been charged if Plaintiffs had not been automatically defaulted into a Higher One account, then unconscionably pressured not to opt-out.

F.    **Higher One Provided Deceptive Account Disclosures To Plaintiffs and Did Not Adequately Disclose The Unconscionable and Unusual Fees Associated with the Accounts**

82. The terms of Higher One's checking accounts are contained in standardized account holder agreements made available to Plaintiffs only in "click-through" form on Higher One's website. A representative copy of Higher One's "Account Terms and Conditions and Related Disclosures" (the "Account Agreement") is attached as Exhibit B. The Account Agreement was never provided to Plaintiffs in printed form, and, upon information and belief, was only provided <u>after</u> Plaintiffs had been forced to choose the "immediate refund" default option of using the Higher One account.

83. Nor did Higher One make fee information easily accessible to Plaintiffs. The fee schedule, attached as Exhibit C, was a separate document and

required Plaintiffs to click a separate link from the Account Agreement and read through a page deceptively filled with all of the free services offered by Higher One—before finally getting to the fee-based services page. Those fee-based services were not visible on the first page of the screen, and could only be viewed if the student scrolled down to another page on the website.

84.     The contract formation process imposed by Higher One upon Plaintiffs was thus procedurally unconscionable because it concealed the true nature of the contract and of the accounts.  The unconscionable contract formation process was another attempt by Higher One to ensure Plaintiffs did not "opt-out" of their Higher One accounts.

85.     Moreover, such terms were drafted and imposed by Higher One, which is the party of vastly superior bargaining strength, on Plaintiffs.  These agreements thus constitute agreements of adhesion.

86.     Higher One did not adequately disclose the unconscionable and unusual fees it charges (or Plaintiffs' inability to reasonably avoid these fees, as discussed below) prior to requiring Plaintiffs to agree to use a Higher One account on the Higher One website.

**G.     Higher One Breached the Contract When It Charged Two ATM Fees For Each non-Higher One ATM Withdrawal**

87.     Plaintiffs could access the funds in their Higher One accounts by making ATM withdrawals.

88.     At least one Defendant charges a $2.50 "non-Higher One ATM Transaction Fee" for all ATM withdrawals made at ATMs not owned by Higher One.  Higher One charges this fee **in addition to** ATM fees charged by the owners

of the ATMs.  Accordingly, Plaintiffs (with the exception of Plaintiff Hannibal) paid $4.50 or more for each ATM withdrawal they made from a non-Higher One ATM.

89.    This double-charging is prohibited by the terms of Plaintiffs' contract with Higher One.

90.    Under the heading of "ATM Operator/Network Fees," the Account Agreement states: "When you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer)."

91.    Nowhere in the Account Agreement is there any suggestion that Higher One will charge its own fee for the use of a non-Higher One ATM.

92.    In a separate document, entitled "Fee Schedules," there is a row entitled, "Non-Higher One ATM Transactions (Includes all withdrawals, Inquiries, and declines)."  Nowhere on the Fee Schedules does Higher One make it clear that the ATM fee is being charged by Higher One.  Indeed, read together with the Account Agreement, the only reasonable interpretation of the provision would make it simply a notation of the amount of the fee charged by the non-Higher One bank, which is the only fee referenced in the Account Agreement.

93.    If Higher One wanted to require its customers to pay two fees for each use of a non-Higher One ATM machine, it was at least required to explicitly disclose that in the Account Agreement and the Fee Schedule.  Instead, in both places, Higher One states that the consumer will have to pay only one fee for such a transaction.

94.     In the Fee Schedule, Higher One represented that only one fee would be charged for each ATM transaction.   In a different document (the Account Agreement), Higher One stated that the ATM owner may assess a fee for use of a non-Higher One ATM machine.   At the very least, these two statements are ambiguous or conflicting, and the most reasonable interpretation is that the two documents are describing the same (single) ATM fee.   Nowhere in either of these documents did Higher One ever inform Plaintiffs that they would be systematically charged two fees for the same ATM transaction.

95.     Therefore, Higher One breaches the Account Agreement when it allows the total assessment of at least $4.50 in fees to be charged for each non-Higher One ATM withdrawal.

96.     Charging the equivalent of non-Higher One ATM Transaction Fees is not industry practice.   Upon information and belief, the vast majority of U.S. banks do not charge a similar "out of network" fee.

**H.      By Providing An Extremely Limited Number of "In-Network" ATMs, Which Themselves Provide Only Limited Hours and Days of Operation, Higher One Made it Impossible for Plaintiffs to Avoid "Non-Higher One ATM Transaction Fees"**

97.     As discussed above, allowing fees of upwards of $4.50 for an ATM withdrawal violates Higher One's contract with Plaintiffs.   Such charges are additionally oppressive, unscrupulous and substantially injurious to consumers because "in-network" Higher One ATMs are exceedingly rare, and are not available to students at all hours, on weekends, or during school vacations or holidays.   Therefore, Plaintiffs could not reasonably avoid such fees, and they

were forced to use "out of network" ATM machines during these periods and when out of range of the very few in-network ATMs.

98.     Upon information and belief, Higher One intentionally limits the number of "in-network" ATMs it provides in order to increase its ATM fee revenue.  Indeed, Higher One disburses financial aid to students at over 520 colleges across the county, but has only about 600 total ATMs in service, according to U.S. PIRG.

99.     Upon information and belief, Higher One intentionally limits the access hours of its "in-network" ATMs in order to increase its ATM fee revenue.  U.S. PIRG reports that Higher One encourages ATMs to be placed <u>inside</u> limited-access buildings by charging higher fees to schools for ATMs placed outside of such buildings, where they would be accessible to students at all hours.

100.    Moreover, frequent reports indicate that the scarce Higher One ATMs often run out of cash during peak usage periods—for example, at the beginning of semesters.  U.S. PIRG reports there are commonly long lines of students trying to access financial aid funds at Higher One ATMs on campus, and that ATMs run out of money—forcing students to use out-of-network ATMs.

101.    Each Plaintiff (with the exception of Plaintiff Hannibal) was forced to use a non-Higher One ATM in order to access his or her financial aid funds because it was difficult or impossible for Plaintiffs to access the Higher One ATM(s) on their respective campuses at the time and place they needed to withdraw their financial aid funds.

102.    The failure of Higher One to provide adequate fee-free ATM access to Plaintiffs violates the public policy of the U.S., including 34 C.F.R. 668.164 (c) (3)(v), which provides that an institution must ensure that students have <u>convenient</u> access to ATMs or a branch office of the bank in which the account was opened.

103.    Higher One concealed the fact of this extremely limited access to Higher One ATMs from Plaintiffs at the time they were forced to choose whether or not to "opt-out" of a Higher One account.   This concealment is another, independent, tactic Higher One used to encourage Plaintiffs not to opt-out of the Higher One account disbursement.

104.    Indeed, in an apparent attempt to remedy this concealment, Higher One has recently updated its Account Agreement to say:

> Our ATMs are not accessible on your school's campus 24 hours a day, 7 days a week, so you will need to plan accordingly by contacting your school to determine the accessibility of our ATM(s) on your campus.
>
> If our ATM(s) on your campus are not functioning properly due to any maintenance or repair related issues or be out of cash at any time and you use a non-Higher One ATM we will refund you up to $5.00 per day on any non-Higher One ATM fee(s) and surcharge(s) you incur. This refund only applies to campuses where our ATM(s) has already been installed. You will need to contact us in writing via EasyHelp, website or by mail to request this credit.

105.    Plaintiffs did not have the benefit of such disclosures, nor were they provided the offer of fee refunds.

106.    That Higher One now offers a $5 refund for certain out-of-network ATM withdrawals is evidence that Higher One has control over, or takes

responsibility for, out-of-network ATM fees—whether those fees are assessed by Higher One or by other banks.

107.    Defendants' ATM practices violate DOE guidance.  In Dear Colleague Letter GEN-12-08, the DOE states:

> Under 34 C.F.R. 164(c)(3)(ii), the institution must inform the student *before the account associated with the card is opened* of the terms and conditions of the card or other instrument, *including any fees and other costs associated with the account*. This information should include whether all or some of the fees incurred per month by the student will be refunded back to the student's account.
>
> *Institutions also should mention whether cards issued through its contracted financial institution's ATM are part of a surcharge-free network, indicate the name of the network, and indicate the approximate number of available ATM's in that network both nationally and locally. Institutions should also disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks*

(emphasis added).

108.    As discussed above, Higher One does not comply with this guidance and does not properly disclose its extremely limited number of "fee-free" ATMs or the fact that the small number of ATMs makes it very likely students will incur additional out-of-network fees.

109.    Had Higher One not forced students to affirmatively opt-out of Higher One accounts, bombarded students with a deceptively co-branded debit card and associated materials, and intentionally created barriers to other banking options, students could easily have chosen a bank which offered a much larger network of free ATMs, allowing students to avoid this unconscionable and unusual non-Higher One ATM Fee.

110.   Upon information and belief, Defendants jointly developed the policies and instructions that caused Wright and Bancorp to unlawfully debit Plaintiffs' accounts for the ATM fee amounts.

**I.   By Labeling Its Access Device a "Debit Card," Higher One Deceived Plaintiffs Into Incurring "PIN-Based Transaction Fees"**

111.   A Higher One debit card can be used to make a purchase in two ways: (1) an Automated Clearing House ("ACH") or "debit" transaction, in which a customer enters his/her PIN number at the point of sale; or (2) a "signature" or "credit" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.   A user selects the option of "debit" to use the card in an ACH transaction, or selects the term "credit" to use the card in an "offline signature" transaction.

112.   The Higher One debit cards issued to Plaintiffs after Higher One accounts were opened on their behalf were boldly stamped with the word "debit" on the front of the card and in two other places on the card.

113.   Further, the Account Agreement specifically refers to all debit card transactions as "*Debit* MasterCard® Card Point-of-Sale ("POS") Transactions" (emphasis added).

114.   In addition, in "Orientation" videos Higher One makes available online, Higher One affirmatively states that "it's a debit card, NOT a credit card."

115.   Each time Plaintiffs swiped the card as a "debit" and entered their PIN, they were charged a 50-cent PIN-Based Transaction Fee by Higher One.   The only way to avoid that 50-cent fee on every purchase is to press "credit" at a sales terminal and sign the receipt.

116.   Higher One did not adequately disclose this fact to Plaintiffs, and misled Plaintiffs by placing the term "debit" on the card and by referring to the "debit" MasterCard in its contract documents, when, in fact, Plaintiffs had to select the "credit" option in order to avoid the fee.

117.   In other words, Higher One deceptively told Plaintiffs on the face of the card that the card was <u>not</u> a credit card.  Nonetheless, Plaintiffs had to use it as a credit card in order to avoid being charged the fee.

118.   Further, at some merchants, students do not even have the choice of selecting the "credit" option.

119.   Other merchants make it difficult to find the "credit" option at terminals.   For example, customers swiping a debit card at Wal-Mart are immediately presented with the PIN screen; to use the "credit" option, a student must press "cancel" to exit the PIN screen, then press "credit" on the next screen.   Higher One does not disclose to students how to select the "credit" option in this circumstance.

120.   At other merchants, students cannot select the "credit" option unless their purchase is above a minimum amount.

121.   Each Plaintiff incurred PIN-based Transaction Fees because they were not aware they had to use the Higher One card as a "credit" card at the point of sale, or because there was no option to select "credit" at the merchant, or for both reasons.   Plaintiffs could not reasonably avoid the assessment of the PIN-Based Transaction Fees.

122.   That Higher One's disclosures are not effective and that PIN transactions are in many cases unavoidable is evidenced by the fact that, according to Higher One, <u>more than 50% of all its student account holders incur at least one PIN-based fee</u>.

123.   Charging PIN-Based Transaction Fees is not industry practice.  Upon information and belief, the vast majority of U.S. banks do <u>not</u> charge such a fee.

124.   Had Higher One not forced students to affirmatively opt-out of Higher One accounts, sent students deceptive co-branded debit cards and associated materials, and intentionally made other banking options unpalatable, Plaintiffs could easily have chosen a bank which offered similar services but did not charge, for example, this unconscionable and unusual PIN-Based Transaction Fee.

J.   <u>Defendants Unlawfully Charged Overdraft Fees on Accounts Used For Financial Aid Funds and Violated the Covenant of Good Faith and Fair Dealing in Authorizing Overdraft Transactions</u>

125.   Plaintiffs Price, Crockett, and B. Kent were charged overdraft fees by at least one Defendant.

126.   DOE regulations state that if a bank account is opened for a student to receive a financial aid disbursement, an entity cannot "subsequently convert the account, card, or device to a credit card or credit instrument."  34 C.F.R. § 668.164(c)(3)(vii).  Because Defendants "default" students into a Higher One account which allows a student to overdraw that account and incur Overdraft Fees, Higher One debit cards are a "credit instrument," in violation of the public policy of the United States.

127.    Overdraft fees are credit.  For example, the Truth in Lending Act defines "credit" as "the right granted by a creditor to a debtor to defer payment of a debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). Joint guidance by several federal banking regulators acknowledged that "[w]hen overdrafts are paid, credit is extended" and "[o]verdraft balances should be reported on regulatory reports as loans."  70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

128.    The assessment of $29 Overdraft Fees on Plaintiffs also violates the implied covenant of good faith and fair dealing.  According to the Account Agreement, Higher One "reserve[s] the right, with or without notice to you, to either pay or return any item presented for payment against insufficient or uncollected funds."  Higher One also states that "[i]f we choose to honor any debit item that overdraws the Account we do so at our discretion and will not be obligated to do so thereafter."

129.    Therefore, Higher One reserved for itself the discretion as to whether or not to authorize overdraft transactions.  It had a duty to exercise that discretion fairly and refuse to authorize transactions it knew or should have known to be drawn on insufficient funds or drawn on financial aid funds.

130.    Instead, upon information and belief, at least one Defendant systematically and in every instance approved and debited transactions which they knew would result in Overdraft Fees and which they knew would turn Plaintiffs' Higher One debit cards into credit access devices, in violation of federal regulations.

**K.**   **Higher One's Practices and Fees Are Outliers in the Financial Aid Disbursement Industry**

131.   As discussed above, non-Higher One ATM Fees and PIN-Based Transaction Fees are unusual and are not commonly found in other checking accounts available in the marketplace.  These fees are also unusual with respect to Higher One's peer companies in the field of student financial aid disbursement, such as Heartland Payment Systems ("Heartland"), Blackboard, US Bank, and PNC Bank.  In many cases, Higher One's peer companies also refrain from using Higher One-like aggressive efforts to default students into accounts and to pressure students not to opt-out of Higher One accounts.

132.   For example, Blackboard provides financial aid disbursement to at least 25 colleges and universities across the country, covering 120,000 students.  Upon information and belief, Blackboard does not "default" students into use of an account or require use of the account for financial aid disbursement.  For example, at Salt Lake Community College, students must proactively request to be signed up for a Blackboard account, and must fill out an authorization form prior to any disbursement of funds into the Blackboard account.

133.   Further, once a student does request to be enrolled in a Blackboard account, Blackboard charges students no overdraft fees and no PIN-based transaction fees.  Further, students using Blackboard accounts have fee-free access to ATM withdrawals at over 50,000 ATMs—compared to the mere 600 fee-free ATMs provided by Higher One.

134.   Another company, Heartland, provides financial aid disbursement to at least 23 colleges and universities across the country, covering 110,000

students.   Upon information and belief, Heartland defaults students into its account, but provides an electronic direct deposit option of financial aid monies into a student's existing checking/savings account—providing a somewhat greater opportunity for cash-strapped students to opt-out of the "default" account without a major delay in receipt of their financial aid money.    As discussed above, Higher One did not offer Plaintiffs the possibility of electronic direct deposit into an existing account.

135.   Further, upon information and belief, Heartland provides two fee-free ATM withdrawals at <u>any ATM in the country</u> each time a debit card is "loaded" with financial aid funds—something Higher One did not provide to Plaintiffs.  This is in addition to the use of over 250,000 ATMs nationwide for a total fee of $1.50 per withdrawal, compared to the $4.50 per withdrawal or more that Higher One accountholders are charged for out-of-network ATM use.  Further, unlike Higher One, Heartland charges no PIN-based transaction fees.

136.   U.S. Bank provides financial aid disbursement to at least 51 colleges and universities across the country, covering some 1.7 million students.  Upon information and belief, students are not defaulted into a US Bank account.  Instead, they must affirmatively request that their financial aid funds be deposited into a US Bank account.  For example, at Oakland Community College, students continue to receive direct financial aid deposits into their preexisting checking accounts, unless they affirmatively request that it be put on the US Bank "RaiderCard."  Even then, a student cannot be provided a RaiderCard unless he or she affirmatively requests one and provides proper identification.

137.   Students who choose to receive financial aid disbursement via a US Bank account are able to access tens of thousands of fee-free ATMs nationwide. In addition, US Bank charges no PIN-based transaction fees.

138.   PNC Bank provides checking account services to 23 colleges and universities, covering approximately 250,000 students.  Upon information and belief, PNC does not automatically load financial aid monies onto student debit cards.  For example, At Penn State, the university has its own "Rapid Refund" system for quick access to financial aid monies—with no strings attached.

L.   **Defendants Violate Federal Public Policy Promulgated in the Higher Education Act, DOE Regulations, EFTA and Regulation E**

139.   As discussed above, Defendants charge students for access to their financial aid funds, in violation of DOE regulations, including 34 C.F.R. 664.164(c)(3)(iv), which states that, regardless of how students receive their financial aid funds, an entity is <u>prohibited</u> from charging a fee for delivering those funds.

140.   The public policy of the United States makes clear that students are to have a clear and fair choice on how to receive their financial aid funds.

141.   DOE rules mandate that students must have the choice of how to receive their financial aid funds. If an educational institution opens a bank or prepaid card account on behalf of a student or parent, it must, among other requirements, "obtain in writing affirmative consent from the student or parent to open that account." 34 C.F.R. § 668.14(c)(3)(i).

142.   Defendants violate this regulation and act contrary to the public policy of the United States because they do not obtain consent from students

**prior to** "defaulting" a student into a Higher One account they have opened.  A college or university sends funds to at least one Defendant prior to any consent by student.   Further, Higher One sends a pre-printed, unique debit card to students with account information and sensitive personal information already stored on it.

143.    Moreover, DOE guidance requires that all information required for an authorization "must be conspicuous," Federal Student Aid Handbook (September 2011), Vol. 4 Ch. 1, at 4-7, and must be provided before an account is opened.  34 CFR 668.164(c)(3).

144.    Higher One violates DOE guidance set forth in Dear Colleague Letter GEN-12-08 and in 34 C.F.R. 668.25, which state that a student must be informed "**before** the account associated with the card is opened of the terms and conditions of the card or other instrument, including any fees and other costs associated with the account" and should also "disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks" (emphasis added).   As discussed above, Higher One did not adequately inform Plaintiffs of the terms, conditions, and fees associated with the Higher One account, nor did Higher One inform Plaintiffs of the extremely limited number of in-network ATMs available for use.

145.   Further, public policy clearly contemplates the use of federal financial aid funds only for authorized educational purposes.  Defendants are in the business of distributing financial aid funds, yet they ignore this policy.

146.   Higher One does not make account terms and conditions "conspicuous," Federal Student Aid Handbook (September 2011), Vol. 4 Ch. 1, at 4-7, and does not provide those terms and conditions before an account is opened.  34 CFR 668.164(c)(3).  As discussed above, Higher One does not make the Account Agreement or fee schedule reasonably available (and indeed, never provides them in written form), nor does it inform students that its "in-network" ATM system is extremely limited.

147.   The DOE has made clear that "a school may not require or <u>coerce</u> the student or parent to provide an authorization . . ."  34 C.F.R. § 668.165 (emphasis added).

148.   By intentionally delaying access to financial aid funds for students who opt-out of the Higher One account, Defendants coerce students to provide an "authorization" to use the Higher One account, in violation of the public policy of the United States.  HEA promulgates the public policy of the United States with respect to federal financial aid.  Federal student loans and grants are to be used <u>only</u> to cover education-related expenses, including tuition and fees, room and board, books, school supplies, technology needs, and transportation.  Loans and grants can also help pay for necessary dependent care.

149.   According to 34 C.F.R. 668.25, third party servicers like Defendants must "[c]omply with all statutory provisions of or applicable to Title IV of the HEA…including the requirement to use any funds that the servicer administers under any Title IV, HEA program and any interest or other earnings *thereon solely*

*for the purposes specified in and in accordance with that program*" (emphasis added).

150.    Therefore, the regulation places a special burden on third party servicers to comply with rules regarding treatment of federal financial aid funds, which are *not* to be used for bank fees.  Yet Defendants ignore these special requirements and knowingly take students' federal financial aid monies to pay bank fees.

151.    In addition, the Electronic Funds Transfer Act ("EFTA"), and its implementing Regulation E, provide: "No person may…require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit" 15 U.S.C. § 1693k(2); *see also* Regulation E, 12 C.F.R. § 205.10(e). Federal financial aid funds are a "government benefit" that Defendants require students to use Higher One services to access, and Defendants therefore violate the EFTA.

152.    As discussed above, Defendants open Higher One accounts for all students—whether or not any student ultimately agrees to use Higher One.

153.    Moreover, a student is "defaulted" into the Higher One account, and must use the deceptive Higher One website in order to access his or her financial aid funds.

154.    Defendants violate the EFTA even though they purport to provide an opt-out from the Higher One default account.  *Pinkett v. First Citizens Bank*, 2010

WL 1910520 (N.D. Ill. May 10, 2010); *O'Donovan v. CashCall, Inc.*, 2009 WL 1833990 (N.D. Cal. June 24, 2009).

155.   Therefore, Defendants condition students' access to federal financial aid funds on use of a Higher One account, in violation of the public policy of the United States.

156.   Additionally, the E-Sign Act, 15 USC 7001, *et seq.*, permits electronic writings to substitute for legally required paper writings only if certain procedures are followed.  The Act is triggered "if a statute, regulation, or other rule of law requires that information relating to a transaction or transactions in or affecting interstate or foreign commerce be provided or made available to a consumer in writing . . ."  15 USC 7001(c)(1).  If such a "writing" is required, the consumer <u>is not required</u> to accept electronic records, 15 USC 7001(b)(2), and electronic records may be substituted only if the consumer consents and demonstrates the ability to access the electronic records.

157.   The EFTA requires periodic written statements for bank accounts. However, Higher One requires all students to receive all statements electronically.  Higher One *requires* students to sign an E-Sign Disclosure and Consent form.  It permits students to opt out, but only if students contact Higher One by phone (and only after viewing all of the consent documents online). According to Higher One's Account Agreement, students who opt-out of electronic disclosures then have "access and use of the Higher One website and Account . . . terminated."

158.    Therefore, Higher One provides no reasonable opportunity for students to receive bank statements in a written form.

**M.    Defendants' Unconscionable Policies and Provisions**

159.    Defendants' policies and practices are or were unconscionable in the following respects, among others:

a.    Defendants automatically open Higher One accounts on behalf of students and deposit financial aid money into such accounts without consent;

b.    Higher One aggressively markets directly to students, even before matriculation, and without students' consent;

c.    Higher One sends a co-branded debit card to students, representing that Higher One is endorsed by, or is the preferred banking "partner" of, a student's college or university, or that use of the Higher One account is necessary to receive financial aid monies;

d.    Higher One provides students with a Higher One "debit" card, but requires that the card be used as a "credit" card to avoid PIN-Based Transaction Fees;

e.    Higher One pressures students not to opt-out of their Higher One accounts without adequately disclosing the true nature of those accounts, including unconscionable and unusual usage fees;

f.    Defendants intentionally make it difficult for students to opt-out of the Higher One account by failing to provide an electronic "direct deposit" option and by delaying access to financial aid monies for students who choose to use other banking providers;

g.      Higher One imposes contractual forms upon students only electronically, and only after a disbursement choice has been made, without providing students with the meaningful ability to review or approve the terms of those contracts prior to forcing students to make a disbursement choice;

h.      Defendants do not provide means by which students can reasonably avoid PIN Transaction Fees;

i.      Higher One does not adequately disclose non-Higher One ATM Transaction Fees;

j.      Defendants do not provide means by which students can reasonably avoid non-Higher One ATM Transaction Fees;

k.      Defendants charge students, in effect, two service fees for every non-Higher One ATM withdrawal;

l.      Higher One requires its customers to enter into standardized account agreements which include unconscionable provisions;

m.      Defendants do not alert their customers that a debit card transaction or ATM transaction will trigger a PIN-Based Transaction Fee and non-Higher One ATM Fee, and do not provide the customer the opportunity to cancel that transaction, before assessing such fees;

n.      Defendants turn accounts into which financial aid disbursement is made into accounts with credit features by approving overdraft transactions and charging Overdraft Fees;

o.     Defendants force students to use financial aid loan money to pay bank fees, which both exponentially increases the cost of such bank fees over time, and is in violation of federal public policy; and

p.     Defendants violate DOE regulations and guidance.

N.     **Higher One's Practices Harmed Plaintiffs**

160.   Higher One's wrongful policies and practices described above harmed Plaintiffs and members of the Classes.   The following allegations regarding the named Plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Classes as a result of Higher One's wrongful policies and practices.

161.   **Plaintiff Price**

a.     Plaintiff Price is a former checking account customer of Higher One.

b.     In connection with her account, Defendants issued a debit card to Plaintiff Price.

c.     At least one Defendant wrongfully charged Plaintiff Price fees on numerous occasions.

d.     For example, Plaintiff Price was charged PIN-Based Transaction Fees on June 26, 2012.

e.     For example, Plaintiff Price was charged non-Higher One ATM Transaction Fees, in addition to fees imposed by the ATM owner, twice on June 26, 2012 (a total of $5.50 in fees for each withdrawal).

f. For example, Plaintiff Price was charged Overdraft Fees on July 17, 2009.

162. Plaintiff Hannibal

a. Plaintiff Hannibal is a current checking account customer of Higher One.

b. In connection with her account, Defendants issued a debit card to Plaintiff Hannibal.

c. At least one Defendant wrongfully charged Plaintiff Hannibal fees on numerous occasions.

d. For example, Plaintiff Hannibal was charged PIN-Based Transaction Fees on June 15, 2012; June 29, 2012; July 2, 2012; July 6, 2012; and July 9, 2012.

163. Plaintiff Crawford

a. Plaintiff Crawford is a current checking account customer of Higher One.

b. In connection with her account, Defendants issued a debit card to Plaintiff Crawford.

c. At least one Defendant wrongfully charged Plaintiff Crawford fees on numerous occasions.

d. For example, Plaintiff Crawford was charged PIN-Based Transaction Fees on June 10, 2011; June 13, 2011; June 17, 2011; August 15, 2011; October 7, 2011; October 31, 2011; November 22, 2011; January 17, 2012; and January 18, 2012.

e.      For example, Plaintiff Crawford was charged non-Higher One ATM Transaction Fees, in addition to fees imposed by the ATM owner, on October 31, 2011 (a total of $5.50 in fees for each withdrawal).

164.    Plaintiff Crockett

a.      Plaintiff Crockett is a current checking account customer of Higher One.

b.      In connection with her account, Defendants issued a debit card to Plaintiff Crockett.

c.      At least one Defendant wrongfully charged Plaintiff Crockett fees on numerous occasions.

d.      For example, Plaintiff Crockett was charged 22 PIN-Based Transaction Fees on February 2, 2012, February 3, 2012 and February 6, 2012. Plaintiff Crockett was also charged additional PIN-Based Transaction Fees on May 30, 2012 and June 29, 2012.

e.      For example, Plaintiff Crockett was charged non-Higher One ATM Transaction Fees, in addition to fees imposed by the ATM owner, on February 10, 2012; February 13, 2012; and February 16, 2012 (a total of $5.50 in fees for each withdrawal).

165.    Plaintiff P. Kaywood

a.      Plaintiff P. Kaywood is a current checking account customer of Higher One.

b.      In connection with his account, Defendants issued a debit card to Plaintiff P. Kaywood.

      c.     At least one Defendant wrongfully charged Plaintiff P. Kaywood fees on numerous occasions, including non-Higher One ATM Transaction Fees and PIN-Based Transaction Fees.

      166.   **Plaintiff G. Kaywood**

      a.     Plaintiff G. Kaywood is a former checking account customer of Higher One.

      b.     In connection with her account, Defendants issued a debit card to Plaintiff G. Kaywood.

      c.     At least one Defendant wrongfully charged Plaintiff G. Kaywood fees on numerous occasions, including non-Higher One ATM Transaction Fees and PIN-Based Transaction Fees.

      167.   **Plaintiff Krieg**

      a.     Plaintiff Krieg is a current checking account customer of Higher One.

      b.     In connection with her account, Defendants issues a debit card to Plaintiff Krieg.

      c.     At least one Defendant wrongfully charged Plaintiff Krieg fees on numerous occasions.

      d.     For example, Plaintiff Crawford was charged PIN-Based Transaction Fees on July 9, 2012; July 12, 2012; and July 16, 2012.

      e.     For example, Plaintiff Krieg was charged non-Higher One ATM Transaction Fees, in addition to fees imposed by the ATM owner, on July 6, 2012 (a total of $4.50 in fees for each withdrawal).

168.  __Plaintiff Parker__

a.      Plaintiff Parker is a current checking account customer of Higher One.

b.      In connection with her account, Defendants issued a debit card to Plaintiff Parker.

c.      At least one Defendant wrongfully charged Plaintiff Parker fees on numerous occasions, including non-Higher One ATM Transaction Fees and PIN-Based Transaction Fees.

169.  __Plaintiff J. Kent__

a.      Plaintiff J. Kent is a former checking account customer of Higher One.

b.      In connection with his account, Defendants issued a debit card to Plaintiff J. Kent.

c.      At least one Defendant wrongfully charged Plaintiff J. Kent fees on numerous occasions, including non-Higher One ATM Transaction Fees and PIN-Based Transaction Fees.

170.  __Plaintiff B. Kent__

a.      Plaintiff B. Kent is a former checking account customer of Higher One.

b.      In connection with her account, Defendants issued a debit card to Plaintiff B. Kent.

c.     At least one Defendant wrongfully charged Plaintiff B. Kent fees on numerous occasions, including non-Higher One ATM Transaction Fees, PIN-Based Transaction Fees, and Overdraft Fees.

171.   **Plaintiff Lanham**

a.     **Plaintiff Lanham is a current checking account customer of Higher One.**

b.     **In connection with his account, Defendants issued a debit card to Plaintiff Lanham.**

c.     **At least one Defendant wrongfully charged Plaintiff Lanham fees on numerous occasions, including non-Higher One ATM Transaction Fees and PIN-Based Transaction Fees.**

172.   **Plaintiff Forman**

a.     **Plaintiff Forman is a current checking account customer of Higher One.**

b.     **In connection with his account, Defendants issued a debit card to Plaintiff Forman.**

c.     **At least one Defendant wrongfully charged Plaintiff Forman fees on numerous occasions.**

d.     **For example, Plaintiff Forman was charged PIN-Based Transaction Fees on August 30, 2012.**

e.     **Based on information and belief, the fees assessed Plaintiffs are representative of millions of dollars of fees that Defendants wrongfully assessed and deducted from their customers' accounts.**

**O.**   **The Damages Sustained by Plaintiffs and the Classes**

173.   As a consequence of Defendants' policies and practices, Plaintiffs and the Classes have been wrongfully forced to use Higher One accounts and pay unconscionable, unusual, and deceptive bank fees, many of which violate Higher One's own contract.  Defendants have improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

174.   As a consequence of Defendants' improper fees, Higher One has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

175.   Because many of these improperly charged fees were in many cases paid with borrowed money, some students are effectively paying interest on these fees.

176.   All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**FIRST CLAIM FOR RELIEF**
**Violations of CUTPA**
**(On Behalf of the National Class)**

177.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

178.   The Account Agreement imposed by Higher One contains a Connecticut choice of law provision.

179.   Defendants are corporations, and thus are "person[s]" for purposes of CUTPA.  Conn. Gen. Stat. § 42-110a(3).

180.   Defendants' provision of banking services by means of a course of action which emanates from Connecticut constitutes "trade or commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

181.   The acts and practices engaged in by Defendants, and described herein, constitute "unfair or deceptive acts or practices in the conduct of [a] trade or commerce" in violation of CUTPA, Conn. Gen. Stat. § 42-110b(a).

182.   Defendants' policies and practices as alleged herein constitute "unfair trade practices" under CUTPA, as they offend the public policy of the State of Connecticut and the United States, are unethical, oppressive, and unscrupulous, and cause substantial injury to Connecticut consumers.

183.   Defendants' policies and practices as alleged herein constitute "deceptive trade practices" under CUTPA because the policies and practices have a tendency and capacity to deceive consumers.

184.   Defendants' policies and practices as alleged herein are "unfair" under CUTPA.  In determining whether a practice violates CUTPA, Connecticut courts are guided by the criteria set out in the Federal Trade Commission's so-called cigarette rule: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]." (Internal quotation marks omitted.)   *Ventres v. Goodspeed*

*Airport, LLC*, 275 Conn. 105, 155, 881 A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S.Ct. 1913, 164 L.Ed.2d 664 (2006). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Id*.

185.   Defendants' practices as alleged herein are immoral, unethical, oppressive, or unscrupulous and cause substantial injury to consumers.

186.   In addition, Defendants' practices "offend[] public policy as it has been established by statutes" and regulations.

187.   As discussed above, Defendants charge students for access to their financial aid funds, in violation of DOE regulations, including 34 C.F.R. 668.164(c)(3), which state that entities are prohibited from charging a fee for delivering financial aid funds.

188.   The public policy of the United States makes clear that students are to have a clear and fair choice on how to receive their financial aid funds.

189.   DOE rules mandate that students must have the choice of how to receive their financial aid funds.  If an educational institution opens a bank or prepaid card account on behalf of a student or parent, it must, among other requirements, "obtain in writing affirmative consent from the student or parent to open that account." 34 C.F.R. § 668.14(c)(3)(i).

190.   Defendants violate this regulation and act contrary to the public policy of the United States because they do not obtain consent from students prior to "defaulting" a student into a Higher One account they have opened.

Defendants deposit students' financial aid funds into accounts prior to any consent by student.  Further, Higher One sends a pre-printed, unique debit card to students with account information already on it.

191.   Higher One violates DOE guidance in Dear Colleague Letter GEN-12-08 and 34 C.F.R. 668.25, which state that a student must be informed "before the account associated with the card is opened of the terms and conditions of the card or other instrument, including any fees and other costs associated with the account" and should also "disclose how many surcharge-free ATM's are on their campus, their location, the hours that they are accessible to patrons, and, if available, a hyperlink to an ATM locator for their affiliated networks."

192.   Moreover, DOE guidance requires that all information required for an authorization to open an account "must be conspicuous," Federal Student Aid Handbook (September 2011), Vol. 4 Ch. 1, at 4-7, and such information must be provided before an account is opened.  34 CFR 668.164(c)(3).  Higher One does not make all information required for an authorization "conspicuous." As discussed above, Higher One does not make the Account Agreement or fee schedule reasonably available (and indeed, never provides them in written form), nor does it inform students that its "in-network" ATM system is extremely limited. Higher One therefore acts contrary to the public policy of the United States.

193.   The DOE has made clear that "a school may not require or coerce the student or parent to provide an authorization…" to open an account.  34 C.F.R. § 668.165.

194.   By intentionally delaying access to financial aid funds for students who opt-out of the Higher One account, Defendants coerce students to provide an "authorization" to use the Higher One account, in violation of the public policy of the United States.

195.   Further, DOE has regulations that state that if a bank account is opened for a student, Higher One cannot "subsequently convert the account, card, or device to a credit card or credit instrument." 34 C.F.R. § 668.164(c)(3)(vii). Because Defendants "default" students into an account which allows a student to overdraw the account and incur Overdraft Fees, Higher One debit cards are a "credit instrument," in violation of the public policy of the United States.

196.   Further, DOE regulations require ATM access to be convenient so that students are not charged a fee for accessing their financial aid funds.  34 C.F.R. 668.164(c)(3).  As discussed above, Higher One violates this public policy.

197.   Further, public policy clearly contemplates the use of federal financial aid funds only for authorized educational purposes.  Defendants are in the business of distributing financial aid funds, yet they ignore public policy.

198.   The HEA promulgates the public policy of the United States with respect to federal financial aid.  Federal student loans and grants are to be used only to cover education-related expenses, including tuition and fees, room and board, books, school supplies, technology needs, and transportation.  Loans and grants can also help pay for necessary dependent care.

199.   Federal financial aid funds are not to be used for bank fees.   Yet Defendants knowingly take students' federal financial aid monies to pay bank fees, contrary to the public policy of the United States.

200.   Defendants also violate the public policy set out in the EFTA, and its implementing Regulation E, which provide: "No person may . . . require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit" 15 U.S.C. § 1693k(2); *see* Regulation E, 12 C.F.R. § 205.10(e). Federal financial aid funds are a "government benefit" that Defendants require students to use Higher One services to access.   Defendants therefore violate the EFTA.

201.   As discussed above, Higher One accounts were opened for all Plaintiffs—and, overall, nearly 80% of students do not opt-out of this default.

202.   Moreover, Plaintiffs were "defaulted" into the Higher One account, and were forced to affirmatively opt-out of that account in order to receive financial aid funds in a timely manner.

203.   As a direct and proximate result of Defendants' employment of these unfair or deceptive acts and practices, Plaintiffs and members of the Classes have suffered an ascertainable loss within the meaning of C.G.S. § 42-110g(a) and have been damaged by Defendants' unlawful acts.

204.   Plaintiffs and members of the Classes are thus entitled to all relief available under CUTPA.

**SECOND CLAIM FOR RELIEF**
**Violations of State Unfair Trade Practice Laws**
**(On Behalf of the State Subclasses)**

205.  Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.   The allegations in this Second Claim for Relief are, for all non-Connecticut citizens, pleaded in the alternative to the allegations in the First Claim for Relief.

206.  This claim is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes.

207.  Defendants engage in unfair business practices, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, in the following respects, among others:

a.  Defendants' practices relating to the imposition of bank fees are unconscionable, in violation of California Civil Code section 1770(a)(19), and, as a result, constitute an unlawful business act or practice within the meaning of the UCL;

b.  Defendants' practices relating to the imposition of bank fees violate California Civil Code sections 1770(a)(5), (14) and (1), and, as a result, constitute unlawful business acts or practices within the meaning of the UCL;

c.  Defendants' practices relating to the imposition of bank fees constitute unfair business acts or practices within the meaning of the UCL;

d.  Defendants' violations of the federal laws and regulations specified above are unlawful, in violation of the UCL; and

e.      **Defendants' practices of opening a Higher One account without students' consent, into which financial aid refunds are deposited; sending a co-branded, preloaded card from Higher One with "DEBIT" and the name of students' universities stamped boldly on the front; forcing students to visit a Higher One website in order to access financial aid funds that are rightly theirs; providing indirect and delayed access to Account Agreements and Fee Schedules that were themselves filled with misrepresentations and ambiguities; due to the extremely limited number of Higher One ATMs provided, forcing students to use non-Higher One ATMs to access their financial aid money; failing to inform students that they were required to use their Higher One card as a "credit" card at the point of sale; charging PIN-based Transaction Fees when such fees are impossible to avoid; and turning the Higher One card into a credit access device, in violation of DOE regulations, each constitute fraudulent practices within the meaning of the UCL.**

f.      **The harm to Plaintiffs and the California State Subclass arising from Defendants' unlawful and unfair practices relating to the imposition of bank fees outweighs the utility, if any, of those practices.**

g.      **Defendants' unlawful and unfair business practices relating to the imposition of bank fees are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiffs and members of the California State Subclass.**

h.      **As a result of Defendants' violations of the UCL, Plaintiffs and members of the California Statute Subclass have paid, and/or will continue to**

pay, unreasonably excessive amounts of money for checking account services and thereby have suffered and will continue to suffer actual damages.

      i.      Pursuant to California Business and Professions code section 17203, Plaintiffs and the California State Subclass are therefore entitled to, *inter alia*:

      i.      An order requiring Defendants to cease the unlawful and unfair acts alleged herein;

      ii.      Full restitution of all bank fees paid to Defendants, pursuant to California Code of Civil Procedure section 384;

      iii.      Pre-judgment interest at the highest rate allowable by law; and

      iv.      Payment of their attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

208.    Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and imposition of bank fees on consumers, in violation of North Carolina Gen. Stat. §§ 75-1.1, *et seq.*

209.    Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and imposition of bank fees on consumers, in violation of Texas Bus. & Com. Code §§ 17.41 through 17.63.

210.    Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and

imposition of bank fees on consumers, in violation of Washington Rev. Code §§ 19.86.010 through 19.86.920.

211.   Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and imposition of bank fees on consumers, in violation of Louisiana Rev. Stat. §§ 51:1401 through 51:1420.

212.   Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and imposition of bank fees on consumers, in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213.

213.   Defendants engage in unfair business practices relating to the non-consensual creation of bank accounts for disbursement of financial aid and imposition of bank fees on consumers, in violation of Kentucky's Consumer Protection Act,  Ky. Rev. Stat. §§ 367.110 through 367.990.

214.   As redress for Defendants' repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the State Subclasses are entitled to, *inter alia*, damages and declaratory relief.

<u>Rescission</u>
<u>(On Behalf of the National Class)</u>

215.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

216.   Consent by Plaintiffs to the terms of Higher One's Account Agreement and Fee Schedule was not real or free and was given under mistake or fraud.

217.   By, *inter alia*, using an unconscionable system of "defaulting" students into a Higher One bank account, making an opt-out from that "default" difficult and time-consuming, concealing the true costs of the Higher One accounts, and by imposing contracts of adhesion without proper notice, Higher One improperly induced Plaintiffs to contract.

218.   In addition, Higher One induced Plaintiffs to enter into the Account Agreement because they each were deceived into believing that Higher One was preferred or required by their college or university for receipt of financial aid monies.

219.   Higher One was not, and never was, the preferred or required provider.   Indeed, federal regulations prohibit a university or college from requiring use of a particular bank account in order to receive financial aid monies.

220.   Plaintiffs were induced by Higher One to enter the Account Agreement because they were required to use their Higher One account in order to avoid delayed access to their much-needed financial aid funds.

221.   Each Plaintiff believed the only way to receive their financial aid money in a timely fashion was to use the default Higher One account.

222.   Plaintiffs were induced to enter into the Account Agreement because Higher One concealed from them the true costs associated with the account, including the extremely limited number of "in-network" ATMs.

- 64-

223. In addition, **Higher One has made, and continues to make, representations it knows or reasonably should have known were false and deceptive.**

224. **With their consent to the contract given only under mistake or fraud, as described above, Plaintiffs seek rescission of the Account Agreement and restitution for all bank fees charged by Higher One.**

<u>THIRD CLAIM FOR RELIEF</u>
<u>Breach of Contract</u>
**(On Behalf of the National Class)**

225. **Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.**

226. **To the extent any valid contract exists (despite the procedural and substantial unconscionability described herein), it is embodied in Higher One's Account Agreement and Fee Schedules.**

227. **Higher One has breached the Account Agreement through its policies and practices as alleged herein.**

228. **Specifically, even if the Fee Schedule had been properly provided to students prior to or after account opening (which it was not), the Fee Schedule states: "Non-Higher One ATM Transactions ($2.50 per transaction).  Charged if the student uses any ATM that is not a Higher One ATM."  The Fee Agreement and Account Agreement indicate only a single fee will be charged for out of network ATM withdrawals.**

229. **However, Plaintiffs (with the exception of Plaintiff Hannibal) paid $4.50 or more for the use of a non-Higher One ATM.**

230.   Therefore, Higher One breached the Account Agreement when it allowed the assessment of upwards of $4.50 in fees for each of Plaintiffs' non-Higher One ATM withdrawals.

231.   Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

232.   Plaintiffs and members of the National Class have sustained damages as a result of Higher One's breach of contract.

**FOURTH CLAIM FOR RELIEF**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of the National Class)**

233.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

234.   A covenant of good faith and fair dealing is implied in Plaintiffs' and Class members' Account Agreements with Higher One.

235.   The Account Agreements give Higher One discretion to determine whether or not to approve a transaction which overdraws an account, causing an Overdraft Fee.

236.   As alleged herein, Higher One has abused its discretion by systematically approving overdraft transactions and charging Plaintiffs Price, Crockett, and B. Kent Overdraft Fees for the same transactions.

237.   Higher One's performance of its discretionary functions under the Account Agreements as alleged herein, to maximize their revenue from Overdraft Fees, impedes the right of Plaintiffs and other members of the Classes to receive benefits that they reasonably expected to receive under the contract, as the

financial aid money entrusted to Defendants for their banking activities was reduced.

238.    On information and belief, Higher One's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendants' revenue from Overdraft Fees at the expense of their customers, in contravention of Plaintiffs' reasonable expectations and in contravention of federal regulatory requirements that accounts into which financial aid funds are deposited not be given credit features.

239.    Plaintiffs and members of the putative National Class have sustained damages as a result of Higher One's breach as alleged herein.

<u>FIFTH CLAIM FOR RELIEF</u>
<u>Conversion</u>
(On Behalf of the National Class)

240.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

241.    Defendants had and continue to have a duty to maintain and preserve their customers' financial aid funds and to prevent their diminishment through their own wrongful acts.

242.    By placing students' financial aid funds into Higher One accounts without students' consent, by defaulting students into Higher One accounts, by making it difficult for students to opt-out of this default, and by charging the bank fees specified herein, Defendants have, without proper authorization, assumed

and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

243.    Defendants have wrongfully collected PIN-Based Transaction Fees, non-Higher One ATM Fees, and Overdraft Fees from Plaintiffs and the members of the National Class, and have taken specific and readily identifiable funds from their accounts in payment of such fees in order to satisfy them.

244.    Defendants have, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

245.    Defendants continue to retain these funds unlawfully and without Plaintiffs or members of the National Class' consent.

246.    Defendants intend to permanently deprive Plaintiffs and the members of the National Class of these funds.

247.    These funds are properly owned by Plaintiffs and the members of the National Class, not Defendants, who now claim that they are entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

248.    Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

249.    Defendants have wrongfully converted these specific and readily identifiable funds.

250.    Defendants' wrongful conduct is continuing.

251.   As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

252.   By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Defendants all damages and costs permitted by law, including all amounts that Defendants have wrongfully converted.

### SIXTH CLAIM FOR RELIEF
#### Unjust Enrichment
#### (On Behalf of the National Class) (In the Alternative)

253.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein, excepting those paragraphs which allege the existence of a valid contract.

254.   By means of Defendants' wrongful conduct alleged herein, Defendants knowingly provide banking services to Plaintiffs and members of the National Class that are and/or were unfair, unconscionable, and oppressive.

255.   Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

256.   As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

257.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

258.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, and are still receiving, without justification, from the imposition of PIN-Based Transaction Fees, non-Higher One ATM Fees, and Overdraft Fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

259.    The financial benefits Defendants derived rightfully belong to Plaintiffs and members of the National Class.  Defendants should be compelled to disgorge in a common fund, for the benefit of Plaintiffs and members of the Classes, all wrongful or inequitable proceeds Defendants received.  A constructive trust should be imposed upon all wrongful or inequitable sums Defendants received traceable to Plaintiffs and the members of the National Class.

260.    Plaintiffs and members of the National Class have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
### Statutory Theft: Conn. Gen. Stat. § 52-564
#### (On Behalf of the National Class)

261.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

262.    Plaintiffs and members of the National Class have property interests in the financial aid funds that were deposited, without their consent, in accounts maintained by Defendants.

263.    By automatically depositing such funds, and by debiting improperly disclosed, unusual, and unconscionable bank fees from the accounts of Plaintiffs and the National Class, Defendants have permanently deprived Plaintiffs and the National Class of their property.

264.    Defendants' assessment of bank fees on Plaintiffs' financial aid funds was not authorized by the contract nor was it otherwise authorized by law.

265.    Defendants intended to permanently deprive Plaintiffs and the National Class of the funds that they debited from Plaintiffs' accounts.

266.    Plaintiffs and the National Class have been damaged by Defendants' acts in violation of Conn. Gen. Stat. § 52-564.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.    Declaring Defendants' policies and practices to be wrongful, unfair, and unconscionable;

2.    Permanently enjoining Defendants from continuing their unfair, fraudulent, wrongful, and deceptive acts alleged herein;

3.    Restitution of all PIN-Based Transaction Fees, non-Higher One ATM Fees, and Overdraft Fees paid to Defendants by Plaintiffs and the Classes, as a result of the wrongs alleged herein, in an amount to be determined at trial;

4.      Disgorgement of the ill-gotten gains derived by Defendants from their misconduct;

5.      Establishment of a constructive trust over all of the proceeds in Defendants' possession belonging to the Plaintiffs and members of the Classes;

6.      Actual damages, in an amount according to proof, of at least Five Million Dollars ($5,000,000.00), excluding interest and attorneys' fees;

7.      Punitive and exemplary damages;

8.      Penalties authorized by CUTPA or any other state consumer protection law;

9.      Attorneys' fees;

10.     Damages and other relief pursuant to the Electronic Funds Transfer Act;

11.     Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

12.     Costs and disbursements assessed to Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

13.     Such other relief as this Court deems just and proper.

Dated:          March 1, 2013                    Respectfully submitted,


/s/ Hassan A. Zavareei                     SHEPHERD FINKELMAN, MILLER & SHAH LLP
Hassan A. Zavareei                         James E. Miller (ct21560)
                                           Karen M. Leser-Grenon (ct23587)
TYCKO & ZAVAREEI LLP                       65 Main Street
Hassan A. Zavareei (*pro hac vice*)        Chester, CT 06412
Jeffrey D. Kaliel (*pro hac vice*)         Telephone: (860) 526-1100
2000 L Street NW, Suite 808                Facsimile: (860) 526-1120
Washington, DC 20036                       jmiller@sfmslaw.com
Telephone: (202) 973-0900                  klesser@sfmslaw.com
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com                        GENTLE TURNER SEXTON DEBROSSE &
                                           HARBISON
                                           Diandra Debrosse
*Proposed Interim Lead Counsel*            501 Riverchase Parkway East
                                           Suite 100
                                           Hoover, AL 35244
                                           Telephone: (205) 716-3000
                                           Facsimile: (205) 716-3010
                                           ddebrosse@gtandslaw.com


                                           JONES WARD PLC
                                           Jasper Ward
                                           Alex Davis
                                           312 S Fourth Street, 6th Floor
                                           Louisville, KY 40202
                                           Telephone (502) 882-6000
                                           Facsimile: (502) 587-2007
                                           jasper@jonesward.com
                                           alex@jonesward.com


                                           *Proposed Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2013 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


  /s/ Hassan A. Zavareei
   Hassan A. Zavareei