**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: HIGHER ONE ONEACCOUNT MARKETING AND SALES PRACTICES LITIGATION | No. 3:12-md-02407 (VLB) |
| | DATE: FEBRUARY 14, 2014 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## Table of Contents

Table of Authorities........................................................................... iii

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND RELEVANT TO PRELIMINARY APPROVAL ........................... 5

  A.  History of the Litigation ..................................................... 5

  B.  History of Settlement Negotiations.................................... 8

  C.  Higher One Practice Changes ........................................... 10

III.  THE SETTLEMENT PROVISIONS ................................................. 12

  A.  The Class ......................................................................... 13

  B.  Monetary Relief for the Class .......................................... 13

  C.  Class Release .................................................................. 14

  D.  The Notice Program ......................................................... 14

    1.  Email Notice.............................................................. 16

    2.  Mailed Notice............................................................ 17

    3.  The Settlement Website and the Toll-Free Settlement Line ....................... 18

  E.  Settlement Administration................................................ 18

  F.  Distribution of the Settlement Fund................................. 19

  G.  Class Representative Service Awards............................... 20

  H.  Attorneys' Fees and Costs ............................................... 21

IV.   ARGUMENT .............................................................................. 21

  A.  The Settlement Agreement Merits Preliminary Approval.................... 21

i

1.  The Settlement Agreement Is A Result Of Informed, Non-Collusive Negotiations ................................................................. 24

2.  The Settlement Easily Falls Within the Range of Possible Approval ........ 26

   a.  The Stage of the Proceedings and the Amount of Discovery Completed………………………………………………………26

   b.  The Risks of Establishing Liability and Damages…………………28

   c.  The Complexity, Expense and Likely Duration of the Litigation………………………………………………………..30

   d.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation…………………………………………31

V.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PLAN OF DISTRIBUTION AND ALLOCATION ....................................................... 34

VI.  THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 ................................................. 37

   A.  Numerosity, Commonality and Typicality ....................................... 38

   B.  Adequacy of Representation .......................................................... 40

   C.  Predominance of Common Issues and Superiority........................ 41

VII.  NOTICE.............................................................................................. 43

   A.  Contents of Notice........................................................................ 46

   1.  Opting Out ................................................................................. 46

   2.  Objecting..................................................................................... 47

   3.  Scope of Notice ......................................................................... 47

VIII.  CONCLUSION .................................................................................. 48

## <u>Table of Authorities</u>

**Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........................................................................ 38, 42

*Browning v. Yahoo! Inc.*,
2006 WL 3826714 (N.D. Cal. Dec. 27, 2006)........................................... 45

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 32

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. N.Y. 2013)............................................................ 35

*Chatelain v. Prudential-Bache Sec.*,
805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................... 29

*Chin v. RCN Corp.*,
2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010)............................................ 23

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977)................................................................ 31

*Cross v. 21st Century Holding Co.*,
2004 WL 307306 (S.D.N.Y. Feb. 18, 2004).............................................. 38

*Danieli v. IBM*,
2009 WL 6583144 (S.D.N.Y. Nov.16, 2009) ............................................ 36

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................... 26, 28, 33

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
89 F.R.D. 87 (S.D.N.Y. 1981) ................................................................ 42

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174, 186 (W.D.N.Y. 2005) ................................................ 29, 37

*Friedman v. Union Bank of Switzerland (In Re Holocaust
Victim Asset Litigation)*,
413 F.3d 183, 186 (2d Cir. 2001)……………………………………………………37

*Hicks v. Morgan Stanley & Co.*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................... 30

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987)...... 31, 37

*In Re AmBase Corp.*,
1995 U.S. Dist. LEXIS 15516 (S.D.N.Y. Oct. 20, 1995)............................. 32

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ............................................ 34

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009) ............................................................ 35

*In re Currency Conversion Fee Antitrust Litig.*,
2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ........................................... 22

*In re Gilat Satellite Networks, Ltd.*,
2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .......................................... 23

In re Host Am. Corp. Sec. Litig.,
2007 WL 3048865 (D. Conn. Oct. 18, 2007) ......................................... 40

*In re Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75, 92 (D. Mass. 2005) ...................................................... 42

*In re Marine Midland Motor Vehicle Leasing Litig.*,
155 F.R.D. 416 (W.D.N.Y. 1994) .......................................................... 35

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................... 44

*In re Michael Milken & Assoc. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................. 24

*In re NASDAQ Market-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................. 22

*In re PaineWebber Ltd., P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ........... 24, 26, 31

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995).......................................................... 22, 23

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................ 45

*In re Sturm, Ruger, & Company, Inc. Securities Litigation*,
2012 WL 3589610 (Aug. 20, 2012) ....................................................... 33

*In re AOL Time Warner ERISA Litigation*,
2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ........................................ 40

*In re Traffic Executive Ass'n*,
627 F.2d 631 (2d Cir.1980)................................................................. 23

*In re Union Carbide*,
718 F.Supp. 1099 (S.D.N.Y. 1989) ...................................................... 34

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................................ 22

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................. 27

*Maywalt v. Parker and Parsley Petroleum Co.*,
67 F.3d 1072 (2nd Cir. 1995).............................................................. 46, 47

*McKenzie Construction Inc. v. Maynard,*
  758 F.2d 97 (3d Cir.1985)...................................................... 27

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) ........................................ 30

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950) ............................................................ 47

*Norflet v. John Hancock Life Ins. Co.,*
  658 F. Supp. 2d 350 (D. Conn. 2009) .................................. 35

*Parker v. Time Warner Entm't Co., L.P.,*
   631 F. Supp. 2d 242 (E.D.N.Y. 2009) .................................. 35

*Phillips Co. v. Shutts*,
  472 U.S. 797 (1985) ...................................................... 43, 47

*Reed v. General Motors Corp.,*
  703 F.2d 170 (5th Cir. 1983)................................................ 24

*Reilly v. Tucson Elec. Power Co.,*
  512 U.S. 1220, 114 S.Ct. 2707, 129 L.Ed.2d 834 (1994) ......... 47

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................. 22, 30

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
  2004 WL 1087261 (S.D.N.Y. May 14, 2004)........................... 27

*Torres v. Gristede's Operating Corp.,*
  2010 WL 2572937 (S.D.N.Y. Jun. 1, 2010)............................ 36

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir.1993)................................................... 47

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005).............. 43

*Weigner v. City of New York,*
  852 F.2d 646 (2d Cir.1988), *cert. denied,* 488 U.S. 1005(1989) .................. 44

*Weinberge v. Kendrick,*
  689 F.2d 61 (2d Cir. 1982).................................................... 33


**Other Authorities**

**Alba Conte & Herbert Newberg, Newberg on Class Actions
§ 11.28, at 11-59 (3d ed. 1992)** ............................................ 25

**Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS
 § 11.45 (4th ed. 2002)** ................................................ 26, 43

**Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
§§ 4.21, 4.25 (1992).** ...................................................... 42

**http://www.fdic.gov/news/news/press/2012/pr12092.html** ........................................ 33

**Manual for Complex Litigation (Fourth), at § 21.162 (2004)** .................................... 22

**Manual for Complex Litigation (Third), at § 30.41 (1995)** ........................................ 23

<u>**Rules**</u>

**Fed. R. Civ. P. 23** ....................................................................................... 37, 43

**Fed. R. Civ. P. 23 (c)(2)(B)** ....................................................................... 43

**Fed. R. Civ. P. 23(b)(3)** ........................................................................ 41, 42

**Fed.R.Civ.P. 23(f)** ...................................................................................... 34

**Federal Rule of Civil Procedure 23(e)** ...................................................... 21

**Rule 23(a)(1)-(3)** ....................................................................................... 38

**Rule 23(a)(4)** ............................................................................................. 40

**Rule 23(b)** ................................................................................................. 38

## I.      INTRODUCTION

Plaintiffs, Brandi Crawford, Tarsha Crockett, Aisha DeClue, Larry Forman, Rhonda Hannibal, Prince Kaywood, Gaynell Kaywood, John Brandon Kent, Brianne Elizabeth Kent, Kristen Krieg, Jonathan Lanham, Ashley Parker, and Jeanette Price, (the "Plaintiffs"), on behalf of themselves, and the proposed Class defined below, respectfully submit this Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement.  For the reasons set forth below, the proposed settlement (the "Settlement") is fair, reasonable and adequate.  The Settlement is the product of arm's-length negotiations between Plaintiffs' Interim Lead Counsel ("Class Counsel") and Defendants, Higher One Holdings, Inc., Higher One Inc. (collectively referred to as "Higher One"), Wright Express Financial Services Corporation ("WEX"), Taylor Capital Group, Inc. ("Taylor"), and the Bancorp Bank ("Bancorp") (collectively, "Defendants").  The Court should grant preliminary approval because the $15 million Settlement provides substantial monetary relief to the Class, and because the Settlement provides for meaningful and immediate changes to the Higher One business practices challenged in this Litigation.  As explained below, the terms of the Settlement are well within the range of reasonableness and are consistent with applicable case law.  Indeed, the Settlement is an excellent result for the class of Higher One account holders defined in the Settlement Agreement (the "Class") and easily satisfies all Second Circuit criteria for preliminary settlement approval.  Accordingly, Plaintiffs request entry of a Preliminary Approval Order that will begin providing the Class with notice on the following schedule:

| Event | Days From Preliminary Approval Order |
|---|---:|
| Higher One Transfers $15,000,000 to Settlement Fund | 9 Days |
| Email Notice Complete | 30 Days |
| Mailed Notice Complete | 60 Days |
| Opt-Out Deadline | 105 Days |
| Deadline to Submit Objections | 105 Days |
| Motion for Final Approval | 124 Days |
| Final Fairness Hearing | 170 Days |

These consolidated cases are proposed class actions in which Plaintiffs challenge Defendants' marketing of, and fee assessment upon, certain checking accounts used to deliver financial aid funds to students at participating colleges and universities.  The proposed Settlement provides the following substantial and meaningful relief to the Class:

- Higher One will deposit $15,000,000 in a common fund for the benefit of the Class;

- As a substantial result of this Litigation, Higher One has made significant changes to its business practices, and Higher One agrees to continue those changes for a minimum of two years after the Settlement Effective Date.  Since the inception of the changes and through period required by the Settlement, those changes are anticipated to cost Higher One over $66 million in lost fee revenue and include the following:

  a. Not opening any Higher One account without requiring students' separate affirmative consent to the Fee Schedule in addition to affirmative consent to the Account Terms and Conditions for Higher One accounts;

  b. Improving the clarity and readability of the Fee Schedule, consistent with best practices as recommended by the Pew Charitable Trust for consumer checking accounts;

  c. Where a fee is charged for use of a non-Higher One ATM, explaining clearly in both in the OneAccount's Fee Schedule

that both Higher One and an ATM owner may each assess a OneAccount holder a fee in connection with a non-Higher One ATM transaction;

d.   Simplifying the process by which students may transfer their funds to other, non-Higher One checking accounts;

e.   Offering a refund of up to $5 per day for Non-Higher One ATM fees incurred when Higher One ATMs  are not functioning properly due to any maintenance or repair related issues or when Higher One ATMs are out of cash;

f.   Eliminating entirely the Lack of Documentation Fee on OneAccounts;

g.   Eliminating entirely the Abandoned Account Fee on OneAccounts;

h.   Eliminating entirely the Delinquent Account Fee on OneAccounts;

i.   Eliminating Insufficient Funds Fee, Non-Sufficient Funds Fee, or Overdraft Fee on recurring debit card transactions made with a OneAccount; and

j.   Not marketing the OneAccount as "free" when marketing the basic OneAccount, even where no monthly maintenance fee is imposed.

- Higher One will pay, separate from the Settlement Fund and as provided for in the Settlement Agreement, for the costs of a robust notice plan and for settlement administration, as well as related costs incurred in connection with the effectuation of the Settlement.

In sum, this is a robust Settlement that provides real benefits to hundreds of thousands of Higher One accountholders.  As explained fully below, Plaintiffs have established all necessary prerequisites for preliminary approval of the Settlement.  First, the Settlement provides excellent relief to Class Members, who may make simple, easy-to-submit claims to receive their *pro rata* share of the Net Settlement Fund.  In addition, Higher One has agreed to pay, separate from the

Settlement Fund, the costs of Settlement notice and administration as provided for in the Settlement Agreement—costs which are estimated to be over $1.3 million and potentially as high as $2 million—another significant feature of the Settlement which accrues to the benefit of the Class.  Lastly, Plaintiffs and Higher One estimate that the economic value to the Class of Higher One's practice changes (in the form of fees no longer charged by Higher One) is at least $66 million from their inception through 2016—and that figure does not include the difficult-to-quantify value of improved OneAccount disclosures and the enhanced ability of students to conveniently select checking account options other than Higher One's.  In the face of certain risks discussed below, Plaintiffs' $15 million recovery, plus costs of notice and administration, as well as meaningful practice changes, is outstanding—and merits preliminary approval.

For these reasons, and those detailed herein, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) certify for Settlement purposes the proposed Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Brandi Crawford, Tarsha Crockett, Aisha DeClue, Larry Forman, Rhonda Hannibal, Prince Kaywood, Gaynell Kaywood, John Brandon Kent, Brianne Elizabeth Kent, Kristen Krieg, Jonathan Lanham, Ashley Parker, and Jeanette Price as Class representatives; (4) approve the Notice program set forth in the Settlement Agreement (attached hereto as Exhibit A), and approve the form and content of the Notices (Attachments 2-5 to the Declaration of Kim Schmidt, Rust Consulting ("Schmidt Decl."), attached hereto as Ex. C); (5) approve and order the opt-out and objection procedures set forth in

the Settlement Agreement; (6) stay the Litigation against Defendants pending Final Approval of the Settlement; (7) appoint as Class Counsel the attorneys and law firms listed in Paragraph C of the Settlement Agreement; and (8) schedule a fairness hearing to consider granting Final Approval of the Settlement to occur no sooner than September, 2014.

## II.   BACKGROUND RELEVANT TO PRELIMINARY APPROVAL

### A.   History of the Litigation

Class Counsel began investigating potential plaintiffs' claims against Higher One and reviewed several sets of checking account statements and various Higher One marketing materials beginning in 2011.  Declaration of Hassan A. Zavareei ("Zavareei Decl.," attached hereto as Ex. B), ¶ 4.  At an early stage, this investigation allowed Class Counsel to develop an understanding of the nature of Higher One's conduct, the language of the account agreements and marketing representations at issue, and potential causes of action and remedies. *Id.*

Class Counsel expended significant resources researching and developing the legal claims at issue in this case, including the claims asserted under the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b *et seq.* and their applicability to out-of-state consumers. *Id.* ¶ 5.

The complaints in the Litigation, which were filed by the Plaintiffs and their respective counsel between July 2012 and November 2012 in six different federal district courts and state courts, (*Price v. Higher One Holdings, Inc.*, No. 3:12-cv-1093-VLB ("*Price*"); *Parker v. Higher One Holdings, Inc.*, No. 3:12-cv-1788-VLB

(*"Parker"*); *Massey v. Higher One Holdings, Inc.*, No. 3:12-cv-1808-VLB
(*"Massey"*); *Lanham v. Higher One Holdings, Inc.*, No. 3:12-cv-1811-VLB
("*Lanham"*); *Kent v. Higher One Holdings, Inc.*, No. 3:13-cv-48-VLB ("*Kent"*);
*DeClue v. Higher One Inc.*, No. 3:13-cv-556 VLB ("*DeClue"*)), each alleged that
Higher One and Bancorp had engaged in unfair and deceptive practices regarding
the marketing of the OneAccount to Class Members and had charged unlawful
and improper fees. Certain of the complaints contained similar allegations
against WEX and Taylor Capital Group.  *Id.* ¶ 6.

On September 11, 2012, Defendants requested that the Judicial Panel on
Multidistrict Litigation ("Panel") transfer the *Price*, *Parker*, and *Kent* matters to a
single district for coordinated or consolidated pre-trial proceedings.  While that
motion was pending, Defendants notified the Panel of the *Lanham* and *Massey*
matters and asked that they receive similar treatment.  On December 11, 2012, the
Panel granted Defendants' motion and transferred the *Price*, *Parker* and *Kent*
matters to this Court for all pre-trial proceedings.  On December 21, 2012, the
Panel also transferred the *Lanham* and *Massey* cases to this Court.

On October 28, 2012, Defendants filed their first motion to dismiss arguing
that certain of Plaintiffs' claims failed as a matter of law. The Parties fully briefed
this motion, which became moot upon transfer of other cases to this Panel.

On January 11, 2013, with the consent and agreement of all Plaintiffs'
counsel, Tycko & Zavareei LLP moved the Court to be named Interim Lead
Counsel of the consolidated litigation.  This Court granted the motion on March
28, 2013.

On November 5, 2012, Aisha DeClue filed *DeClue v. Higher One Inc.*, No. 12SLCC4229., in the Circuit Court for Saint Louis County, Missouri. On December 20, 2012, Higher One removed the case to the United States District Court for the Eastern District of Missouri (No. 4:12-cv-2361), and also requested that the Panel transfer *DeClue* to the District of Connecticut as part of the MDL Proceedings, which the DeClue Counsel opposed.  Nonetheless, the Panel transferred the DeClue Case on to this Court on April 1, 2013.

Plaintiffs consulted with experts both on potential theories of liability and damages, with a particular emphasis on intricate student financial aid regulations.  Zavareei Decl., ¶ 7.   On March 1, 2013, Class Counsel filed a motion seeking permission to file a Consolidated Amended Complaint in the newly-formed MDL. The Court granted the motion on March 28, 2013, and the Consolidated Amended Complaint was filed on April 2, 2013.

On April 22, 2013, Defendants filed a motion to strike Plaintiffs' nationwide CUTPA claims.  Defendants also filed a second motion to dismiss the case, arguing, among other things, that many of Plaintiffs' claims were preempted by the Higher Education Act ("HEA"), 20 U.S.C. § 1098(g).  The Parties fully briefed these motions, which remain pending.

Plaintiffs actively pursued discovery.  Zavareei Decl., ¶ 8.  Plaintiffs served Defendants with hundreds of requests to admit, interrogatories, and requests for production. Defendants responded or objected to each of these discovery requests.  *Id.* ¶ 9.  Defendants also served requests for production and interrogatories on Plaintiffs, to which Plaintiffs responded and/or objected.  *Id.*

¶10.  The Parties met and conferred on their respective discovery requests extensively.  *Id*. ¶ 8.  Defendants also began actively producing documents to Plaintiffs, and have produced approximately 15,000 pages of documents to date, including sample webflows, marketing materials, account agreements, and the agreements between the Defendants, all of which have been reviewed by Plaintiffs.  Defendants have also produced a database containing the fee information for 3.7 million OneAccounts.  *Id*. ¶ 9.  Each Plaintiff also provided interrogatory responses to Defendants.  *Id*. ¶ 10.

B.    <u>History of Settlement Negotiations</u>

In December, 2012, Class Counsel met with counsel for Defendants in Hartford, Connecticut and requested a substantial amount of confidential information regarding Defendants' policies and practices and information regarding Higher One's revenue attributable to OneAccount fees.  *Id*. ¶ 11.  Higher One provided that information in early 2013.  *Id*. ¶ 12.  The information provided Class Counsel both with important knowledge as to the universe of damages at issue and with additional information regarding the probabilities of Class certification and, ultimately, prevailing on the merits.  *Id*.

Subsequently, the Parties agreed to request that United States Magistrate Judge William Garfinkel of the United States District Court for the District of Connecticut preside over a mediation to determine whether resolution of the Litigation would be possible.  On March 13, 2013, the Parties held an in-person mediation session before Judge Garfinkel in Bridgeport, Connecticut. While the mediation was productive, it did not result in a settlement.  *Id*. ¶ 13.  The Parties

agreed to hold a second mediation session before Judge Garfinkel on May 2, 2013, in Bridgeport, but that mediation ended without an agreement. *Id*. ¶ 14.

On October 10, 2013, the Parties held a third mediation session before Linda Singer, an experienced and well-respected independent mediator located in Washington, D.C. *Id*. ¶ 15. The mediation was contentious and hard-fought, and ultimately resulted in the Parties reaching an agreement in principle on certain material terms of a settlement. *Id*.

The Parties engaged in arm's-length negotiations over the terms of a Settlement Agreement for approximately three months following the Washington, D.C. mediation. *Id*. ¶ 16. During that time, Plaintiffs conducted discovery on the accessibility and content of Higher One's fee data associated with Class Members. *Id*. ¶ 17. Armed with this information, Class Counsel engaged in additional settlement-related analysis to determine—among other things—an appropriate plan for allocation of the Settlement Fund. *Id*. ¶ 27. In addition, Plaintiffs performed detailed confirmatory discovery on Higher One's proposed and implemented business practice changes. *Id*. ¶ 19. That discovery included an in-person visit to Higher One headquarters by Class Counsel to review the implementation and operation of changes to Higher One website and marketing practices. *Id*.

However, the Parties were unable to reach final agreement on all terms of a Settlement Agreement. *Id*. ¶ 28. Specifically, the Parties were unable to agree on a notice and administration plan for the Settlement. *Id*. Accordingly, the Parties re-engaged with Magistrate Judge Garfinkel for help in resolving remaining

disagreements, and reconvened with Judge Garfinkel on January 17, 2014. *Id*. The session was productive, and on January 31, 2014, the Parties were able to reach final agreement on the Settlement Agreement—including the Notice plan, claims process, and plan of allocation—now before the Court. *Id*.

As is evident from the foregoing, the Settlement Agreement involved extensive and protracted negotiations that involved Magistrate Judge Garfinkel and the respected neutral, Linda Singer. The Settlement Agreement was reached only after the provision of key data that allowed Class Counsel to adequately evaluate the possibility of settlement, and only after the production of thousands of pages of written discovery.  In addition, the Parties fully briefed two motions to dismiss and a motion to strike.  Thus, the Settlement was reached after considerable investigation and careful consideration and discussions.  The Parties were thus fully aware of the issues and risks associated with their respective claims and defenses.

C.     Higher One Practice Changes

Subsequent to the initiation of the *Price* action, and substantially as a result of that litigation, Higher One modified certain of its One Account policies and practices.  Zavareei Decl., ¶ 18.  Those changes, set forth in Paragraph 26 of the Settlement Agreement, include: (a) Not opening any Higher One account without requiring students' separate affirmative consent to the Fee Schedule in addition to affirmative consent to the Account Terms and Conditions for Higher One accounts; (b) Improving the clarity and readability of the Fee Schedule, consistent with best practices recommended by the Pew Charitable Trust for

10

consumer checking accounts; (c) Explaining clearly in the OneAccount's Fee
Schedule that both Higher One and an ATM owner may each assess a
OneAccount holder a fee in connection with a non-Higher One ATM transaction;
(d) Simplifying the process by which students may transfer their funds to other,
non-Higher One checking accounts; (e) Offering a refund of up to $5 per day for
Non-Higher One ATM fees incurred when Higher One ATMs are not functioning
properly due to any maintenance or repair related issues or are out of cash; (f)
Eliminating entirely the Lack of Documentation Fee on OneAccounts; (g)
Eliminating entirely the Abandoned Account Fee on OneAccounts; (h) Eliminating
entirely the Delinquent Account Fee on OneAccounts; (i) Eliminating Insufficient
Funds Fee, Non-Sufficient Funds Fee, or Overdraft Fee on recurring debit card
transactions made with a OneAccount; and (j) Not marketing the OneAccount as
"free" when marketing the basic OneAcount, even where no monthly
maintenance fee is imposed.  These modifications were substantially a result of
this Litigation.  Settlement Agreement, ¶ 26.  Higher One agrees to keep the
practice changes in place for a minimum of two years from the Effective Date of
the Settlement.  *Id.* ¶ 27.

The Parties' October 10, 2013 agreement in principle included terms related
to the specific Higher One practice changes.  Subsequently, Class Counsel
reviewed the proposed and implemented practice changes in detail.  Zavareei
Decl., ¶ 18.  Plaintiffs requested and received additional discovery into current
marketing communications, Terms and Conditions and Fee Disclosures, and
reviewed each.  *Id.* ¶ 19.  As noted above, the discovery included an in-person

visit to Higher One headquarters by Class Counsel to review the implementation and operation of changes to Higher One website and marketing practices. *Id.* Dissatisfied with certain practice changes, Class Counsel negotiated with Higher One over further improvements to the practice changes after the completion of its discovery effort, including improvements to Higher One processes and disclosures regarding students' ability to transfer funds to non-Higher One accounts. *Id.* ¶ 20. As a result of these negotiations, Higher One ultimately agreed to make the process for transferring funds into another account even easier for students. *Id.* ¶ 21.

Overall, Plaintiffs and Higher One estimate that the economic value to the Class of Higher One's practice changes (in the form of fees no longer charged by Higher One) is at least $66 million from their inception through the required period, that is, two years following the Effective Date—and that figure does not include the difficult-to-quantify value of improved OneAccount disclosures and the enhanced ability of students to conveniently select checking account options other than Higher One's. *Id.* ¶ 22.

### III.   THE SETTLEMENT PROVISIONS

The full terms of the Settlement are embodied in the Settlement Agreement, attached hereto as Exhibit A. The Agreement is fair and reasonable to the Class, as it provides significant and meaningful benefits to the Class. Moreover, the terms of the Settlement have been carefully crafted and relate directly to the conduct that Plaintiffs challenged in this case. In sum, the Settlement calls for a significant monetary payment to the Class and also provides substantial and

meaningful benefits in the form of significant changes in the manner in which

Higher One conducts its business.

The terms of the Settlement are detailed in the Agreement.  The following is

a summary of the material terms.

A.    The Class

The Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of

Civil Procedure.  The Class is defined as:

> All persons who opened a OneAccount between July 1, 2006 through
> August 2, 2012 and who incurred a OneAccount Fee during that
> period.

Settlement Agreement, ¶ B.

Excluded from this Class are Defendants, their subsidiaries,

affiliates, parents, officers and directors, current and former employees,

any entity in which Defendants have a controlling interest, governmental

entities, and all judges assigned to hear any aspect of this case, as well as

their immediate families.  Also excluded is any person who, during the

Class Period, released Defendants from liability concerning the claims in

the Litigation.  *Id.*

B.    Monetary Relief for the Class

The Settlement required Higher One to deposit $15 million into a client trust

account held by its counsel, Wiggin & Dana, within 7 days of the execution of the

Agreement.  Settlement Agreement, ¶ 21.  That transfer will occur on or before

February 20, 2014.  Zavareei Decl., ¶ 23.  Within 9 days of this Court's preliminary

approval of the Settlement, that deposit will be transferred to a separate Escrow Account that will constitute the Settlement Fund.  Settlement Agreement, ¶ 21.

Higher One will pay the costs of Settlement notice and administration as provided for in the Settlement Agreement separate from the Settlement Fund. Settlement Agreement, ¶ 25.  The Notice administrator currently estimates those costs will be approximately $1.3 million and could be as high as $2 million— another significant benefit to the Class.

**C.    Class Release**

In consideration of the benefits conferred by the Settlement, all Class Members who do not submit a valid and timely opt-out request will be deemed to have released Defendants from claims related to the subject matter of the Action. The detailed release language can be found in Paragraph 40 of the Agreement.

**D.    The Notice Program**

The Parties have chosen one of the leading class action notice and administration firms in the country to serve as the Settlement Administrator for this Settlement.  Rust Consulting ("Rust") is highly experienced in national class action settlement notice and administration.  Schmidt Decl., ¶¶ 2-3.  The Notice program in this Settlement (Settlement Agreement, ¶¶ 39-52) is tailored to take advantage of the information Higher One has available about the Class Members. Schmidt Decl., ¶ 6.  The Notice program will apprise the Class of (a) the pendency of the Action; (b) the Court's preliminary certification of the Class; (c) the terms of the Settlement and the Class Members' rights to opt-out of the Settlement Class or to object to the Settlement; (d) Class Counsel's expected fee application; and

(e) the expected request for Service Awards for Plaintiffs. *Id*. ¶ 28; Settlement

Agreement, ¶¶ 39-52.  All costs associated with the Notice program provided for

in the Settlement Agreement will be paid solely by Higher One.  Settlement

Agreement, ¶ 25.

      The Notice program is comprised of six parts:  (1) direct electronic notice

via email to addresses held in Higher One's business records and which were

provided by the Class Members ("E-mail Notice"), which will include a simple,

easy-to-use electronic claim submission option; (2) for each Class Member where

the E-mail Notice is returned or bounces back as undeliverable, the Settlement

Administrator will mail, via first-class mail postcard, a mailed Notice to each

Class Member at the address identified in Higher One's records ("mailed Notice"),

which will include a "tear-off," pre-populated claim form for easy submission to

the Settlement Administrator; (3) publication Notice ("Published Notice")

designed to support the direct notice efforts noted above, via search engine

sponsored search results and advertising on Facebook; (4) a "Long-form Notice"

with more detail than the direct mail or publication notices, and which will

describe the procedure Class Members must use to opt out of the Settlement or

to object to the Settlement, and/or to Class Counsel's application for attorneys'

fees, that will be available on the Settlement Website; (5) a Settlement Website,

which will explain the Settlement, give answers to frequently asked questions,

allow for the electronic submission of Claims, describe the Settlement Payment

distribution process, and provide links to the Long-Form Notice, the Settlement

Agreement, and such other documents as Class Counsel and counsel for Higher

One agree to post or that the Court orders posted on the website; and (6) a toll-free telephone line for Class Members to call with Settlement-related inquiries. Settlement Agreement, ¶¶ 38-39, 42-51.

All Notices will include, among other information: (a) a description of the material terms of the Settlement; (b) a date by which Class Members may exclude themselves from or "opt out" of the Class and a description of how to effectively opt out; (c) a date by which Class Members may object to the Settlement; (d) a date by which Class Members must file a Claim; (e) the date upon which the Final Approval Hearing will occur; (f) and the web address of the Settlement Website at which Class Members may access the Long-Form Notice, this Agreement, the Claim Form, and other related documents and information.  Settlement Agreement, ¶ 39.

In addition, all notices will make clear that all opt-outs must be received by counsel before the Opt-Out Period expires, and any objections must be received by counsel for the Parties by the objection deadline.  *Id*. ¶ 40.  For an objection to be valid, it must include information specified in the Settlement Agreement.  *Id*. ¶ 41.

## 1.  Email Notice

The Settlement Administrator will e-mail the E-mail Notice to each Settlement Class Member at the e-mail address identified in Higher One's records. The Settlement Administrator will take steps to prevent the E-mailed Notices from being treated as spam by Internet Service Providers. Schmidt Decl., ¶ 11.  Should the Settlement Administrator learn (through an e-mail bounceback or otherwise) that the e-mail address in Higher One's records is invalid, then the

Settlement Administrator will mail a Mailed Notice to that Class Member, as discussed below.  Settlement Agreement, ¶ 45; Schmidt Decl., ¶ 13. Each electronic Notice will contain a link to a pre-populated claim form on the Settlement Website, allowing for quick and easy claim submission.  Settlement Agreement, ¶ 50; Schmidt Decl., ¶ 12.  Class Members will have the opportunity to update address and email information if necessary.  *Id.*

    2. <u>Mailed Notice</u>

For each Class Member where an attempted E-mailed Notice is returned or bounces back as undeliverable, the Settlement Administrator will mail, via first-class mail postcard, a Mailed Notice to each Class Member at the address identified in Defendants' records.  Settlement Agreement, ¶ 47.  However, before mailing postcards, the Settlement Administrator will verify and update the mailing addresses received through the United States Postal Service's National Change of Address database to maximize address accuracy.  *Id.*; Schmidt Decl., ¶ 17.

Next, the Settlement Administrator will perform reasonable address traces for all postcards that are returned as undeliverable.  No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those Class Members whose original mailed postcards were returned as undeliverable and whose new addresses were identified as of that time through address traces.  Settlement Agreement, ¶ 48. The Mailed Notice Program (which is comprised of both the Initial Mailed Notice, and the Notice Re-mailing Process) shall be completed no later than 60 days after the Court's Order of Preliminary Approval.  *Id.* ¶ 46.

Each mailed Notice will be accompanied by a tear-off Claim Form that will allow for easy Claim submission by Class Members.  Schmidt Decl., ¶ 15.

### 3.   The Settlement Website and the Toll-Free Settlement Line

The Settlement Administrator will establish and maintain a Settlement Website, which will explain the Settlement, give answers to frequently asked questions, allow for the electronic submission of Claims, describe the Settlement payment distribution process, and provide links to the Long-Form Notice, this Agreement, and other Court documents, including the complaints filed in the Litigation.  Settlement Agreement, Definition PP.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Class Members to call with Settlement-related inquiries, and certain live telephone support to answer the questions of Class Members who call with or otherwise communicate such inquiries. Settlement Agreement, ¶ 38(d).

### E.   Settlement Administration

All fees and costs related to Notice and Settlement administration provided for in the Settlement Agreement will be paid by Higher One, except that the Settlement Fund will bear the cost if any secondary distribution of funds is necessary.  Settlement Agreement, ¶ 37.  In the event funds remain in the Settlement Fund one year after distribution of Settlement Payment checks to Class Members, and only in such event, Higher One will be entitled to recoup up to $750,000 of the expenses it incurred from the leftover funds.  *Id*. ¶ 59.

Higher One has engaged Rust as Settlement Administrator. Rust will administer various aspects of the Settlement, including, but not limited to,

18

providing E-mailed Notice and/or Mailed Notice to Class Members; making available a Long-Form Notice to Class Members on a Settlement Website; effectuating the Published Notice Program; allowing for the electronic submission of Claims through the Settlement Website and for the Submission of tear-off and printable Claim Forms in hard copy; distributing the Settlement Fund as provided herein; and repaying the Settlement Fund, less any previously authorized expenses, to Higher One in the event of a termination of the Settlement.  Class Counsel and counsel for Higher One will jointly oversee the Settlement Administrator.  Settlement Agreement, ¶ 36.

F.     Distribution of the Settlement Fund

All Class Members who submit a claim will be entitled to a portion of the Settlement Fund.  Within 60 days of the Effective Date, the Settlement Administrator will distribute the Settlement Payments from the Net Cash Settlement Fund to the Claimants who filed timely Claim Forms. Settlement Agreement, ¶ 55.  The Settlement Administrator will make Settlement Payments by mailed check.  Checks will be valid for 180 days. *Id*. ¶¶ 56-57.  The Settlement Administrator will make reasonable efforts to locate the proper address for any Claimant whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address. *Id*.

The amount of each Class Member's distribution will be determined pursuant to a formula described in detail in the Settlement Agreement. *Id*. ¶ 54. To summarize, the allocation formula "weights" certain OneAccount Fees more heavily than others, based on a) the Fee's relative importance to Plaintiffs'

claims; and b) the relative strength of legal claims based on a particular Fee. Zavareei Decl., ¶ 29.  This allocation formula allows Class Members who submit a claim to receive credit for the full value of all Non-Higher One ATM Fees and PIN-Based Transaction Fees—the Fees at the center of this Litigation.  *Id*. ¶ 30.  Other types of OneAccount Fees will be credited to Class Members who submit a claim subject to an overall cap, and at a reduced "weight."  Settlement Agreement, ¶ 54. Higher One has made available to Class Counsel sufficient information to determine and implement the allocation of Net Cash Settlement Fund.  Zavareei Decl., ¶ 31. The data provided by Higher One to Class Counsel included information with respect to each Class Member's total net fees incurred, the "net" amount of certain types of fees, including net Non-Higher One ATM and PIN-Based Transaction Fees, and the net amount of all other fees.  *Id*. ¶ 32.  "Net" fees were calculated by subtracting fee credits or refunds that Class Members have already received from Higher One, for any reason, from fees incurred by fee type. *Id*. ¶ 33.

Using this data, the Settlement Administrator will determine each Claimant's *pro rata* share of the Net Settlement Fund by applying a formula detailed in the Settlement Agreement and at Section F, *infra*. The Settlement Administrator shall then apportion the Net Cash Settlement Fund *pro rata* to Claimants.

G.    <u>Class Representative Service Awards</u>

Class Counsel will ask the Court to approve service awards of $5,000 per Plaintiff and $2,500 per Former Plaintiff ("Service Awards").  Each of the Plaintiffs and Former Plaintiffs devoted substantial time and effort, including responding to

detailed discovery requests and participating in regular communications with counsel to remain fully apprised of all developments in this case and the progress of all Settlement discussions.  Zavareei Decl. at ¶ 34. Higher One shall take no position on Class Counsel's request for payment of the Service Awards. Settlement Agreement, ¶ 54.  If the Court approves them, the Service Awards will be paid from the Settlement Fund.  *Id.*  These awards will compensate the representatives for their time and effort in the Actions, and for the risk they undertook in prosecuting the case against Higher One.

H.     <u>Attorneys' Fees and Costs</u>

Higher One will not oppose Class Counsel's request for attorneys' fees of up to 30% of the Settlement Fund.  *Id.* ¶ 62.  The Parties negotiated and agreed upon this only after reaching agreement on all other material terms of this Settlement.  *Id.* ¶ 65; Zavareei Decl., ¶ 35.  Plaintiffs will submit their request for attorneys' fees at the time they seek final approval of the Settlement Agreement.

## IV.    <u>ARGUMENT</u>

A.     <u>The Settlement Agreement Merits Preliminary Approval</u>

The issue now before the Court is whether the Settlement is within the range of what might later be found to be fair, reasonable and adequate, so that notice of the proposed Settlement should be given to Class Members and a hearing scheduled to consider final approval of the Parties' Settlement Agreement.  Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter within the discretion of the district court.  *See, e.g., In re*

*Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  This discretion should be exercised in the context of a public policy which strongly favors the pretrial settlement of class action lawsuits.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003); s*ee also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *1 (S.D.N.Y. Nov. 20, 2008) ("The settlement of complex class action litigation is favored by the Courts.") (citations omitted).

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval.  In other words, the court must make a 'preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (citations omitted); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled.")  A court is afforded wide discretion in determining the information that it wishes to consider at this preliminary stage, and this initial assessment can be made on the basis of information already known to the court.  Manual for Complex Litigation (Fourth), at § 21.162 (2004).  "Once preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *See NASDAQ*, 176 F.R.D. at 102. At the preliminary approval stage, the court is not required to make a final determination of the

merits of the proposed settlement.  *See Prudential*, 163 F.R.D. at 210 ("At this stage of the proceeding, the Court need only find that the proposed settlement fits 'within the range of possible approval.'") (citation omitted).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir.1980).

Preliminary approval of a proposed settlement is warranted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the reasonable range of possible approval." *See NASDAQ*, 176 F.R.D. at 102 (*citing* Manual for Complex Litigation (Third), at § 30.41 (1995)); *see also In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 1191048, at *9 (E.D.N.Y. Apr. 19, 2007).

Because preliminary approval is simply the first step in the process of approving a settlement, courts have typically screened proposed settlements to determine if they have "obvious deficiencies, such as unduly preferential treatment of class representatives ... or excessive compensation for attorneys." *Chin v. RCN Corp.,* No. 08-7349, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (quoting Manual for Complex Litigation § 30.41 (3d ed.) (1995)).

The Settlement here has none of the "obvious defects" mentioned by courts.  The Settlement itself is not contingent upon approval of attorneys' fees or any service awards to the Class representatives.  Settlement Agreement, ¶ 62.

The Court will separately and independently determine the appropriate amount of fees, costs, and expenses to award to Class Counsel and the appropriate amount of any award to the Class representatives.  Moreover, allocation and distribution of the Settlement Fund will treat Class Members fairly, and indeed those Settlement provisions were agreed upon after considering the input of Magistrate Judge Garfinkel.  Zavareei Decl., ¶ 28.  Accordingly, the Proposed Settlement treats all members of the Proposed Class equally and fairly, and there are no "obvious deficiencies" which would prevent preliminary approval.

Considering the issues, evidence and nature of the Settlement negotiations in this case, preliminary approval clearly is proper in this instance.

1. **The Settlement Agreement Is A Result Of Informed, Non-Collusive Negotiations**

Where a settlement is reached only after extensive arm's-length negotiations by competent counsel who had more than adequate information regarding the circumstances of the Litigation and the strengths and weaknesses of their respective positions, it is entitled to a "strong initial presumption of fairness."  *In re PaineWebber Ltd., P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  The opinion of experienced counsel supporting the settlement is entitled to considerable weight in a court's evaluation of a proposed settlement.  *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried.").  Courts generally presume that

24

settlement negotiations were conducted in good faith and that the resulting
agreement was reached without collusion, absent evidence to the contrary.  Alba
Conte & Herbert Newberg, Newberg on Class Actions § 11.28, at 11-59 (3d ed.
1992) (counsel are "not expected to prove the negative proposition of a
noncollusive agreement").

Settlement discussions took place over the course of 10 months before an
agreement was reached by the Parties.  Zavareei Decl. ¶¶ 17-20.  This case has
been hard fought, and the Settlement negotiations were extensive and adversarial
in nature.  Moreover, the Parties were able to reach the Settlement only after
working repeatedly with Magistrate Judge Garfinkel and with Linda Singer, a
respected mediator.  *Id.* ¶¶ 13-15.  Moreover, Judge Garfinkel mediated the
Parties' disagreements on Settlement Fund allocation and distribution issues and
reviewed the key terms of the Settlement as part of this process.  *Id.* ¶ 28.  There
plainly was no collusion with respect to this proposed Settlement Agreement.

Moreover, the Parties have vigorously litigated this case and have
thoroughly explored the issues in this Litigation.  *Id.* ¶¶ 4-6.  As discussed above,
Class Counsel conducted a thorough investigation and analysis of Plaintiffs'
claims and engaged in extensive formal discovery with Higher One.  *Id.* ¶¶ 7-10.
Class Counsel's review of that extensive discovery enabled them to gain an
understanding of the evidence related to central questions in the case, and
prepared them for well-informed settlement negotiations.  Finally, Class Counsel
and Defendants' counsel are experienced in class action litigation.  *Id.* ¶¶ 40-43.

Accordingly, the proposed Settlement is entitled to a "strong initial presumption of fairness."  *In re PaineWebeer Pshps. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y 1997).

    2.  <u>The Settlement Easily Falls Within the Range of Possible Approval</u>

Even considering the more exacting standard for determining the fairness of the settlement at final approval, the Settlement is fair and reasonable.  The Second Circuit has identified nine factors that courts should consider in deciding whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted).  While not the subject of the preliminary approval analysis, as discussed below, a review of the key factors for final approval support the Court's preliminary approval of the Settlement.

    a.  <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation."  Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.45 (4th ed. 2002).  By the time the Settlement was reached, Class

Counsel had sufficient knowledge of the merits of the claims alleged in the Litigation and the defenses that would be asserted.   Class Counsel are intimately familiar with the factual and legal issues and the ever-changing legal landscape surrounding the claims at issue in this litigation.

Plaintiffs settled this Litigation with the benefit of thousands of pages of documents produced by Higher One, an analysis of a significant sample of fee data and aggregate Higher One revenue data, as well as detailed information regarding business practices, marketing representations, and written disclosures.  As noted, review of this information positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at Class certification, summary judgment and trial.

Class Counsel were well informed of the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses, which permitted them to fully consider and evaluate the fairness of the Settlement to the Class.  *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (citation omitted) (finding action had advanced to stage where parties "'have a clear view of the strengths and weaknesses of their cases.'").  "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Construction Inc. v. Maynard,* 758 F.2d 97, 101-2 (3d Cir.1985).  In the context of a complex class action, early settlement has far reaching benefits in the judicial system.  *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

### b. The Risks of Establishing Liability and Damages

In assessing a proposed settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463. While Class Counsel believe that Plaintiffs' claims are meritorious, there are substantial risks to achieving a better result for the Class through continued litigation. Those risks are laid bare in the two motions to dismiss and one motion to strike that Higher One filed. Docket No. 25; *Price v. Higher One Holdings, Inc.*, No. 3:12-cv-1093-VLB, Docket Nos. 39-40. Specifically, Plaintiffs would face legal risk that, *inter alia*, their claims could be found preempted in whole or in part; that a factfinder could determine Higher One's disclosures were adequate and not misleading; that the Defendants other than Higher One were not responsible for the complained about conduct; and that Plaintiffs' CUTPA claims would be limited to Connecticut consumers only.

Moreover, while Class Counsel believes that a class would be certified even over Defendants' objections, there is always a risk that Defendants would successfully block class certification. In attempting to block class certification, Higher One would point to variations both in Higher One practices over time and across colleges and universities, to the fact that colleges and universities also provided independent (and differing) information to students about the financial aid refund process, as well as variations in students' response to, and interpretation of, Higher One disclosures and marketing materials. But for the Settlement, Defendants would have contested certification of the Class, and even if the Class was eventually certified by the Court, Defendants would have likely

taken any opportunity to argue for decertification as the Litigation progressed. Further, there is no assurance of maintaining certification of a class, as courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory"); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the Settlement avoids any uncertainty with respect to class certification or decertification.

Protracted litigation carries inherent risks that would necessarily have delayed and endangered Class Members' monetary recovery. Zavareei Decl., ¶ 36. This Settlement provides substantial relief to Class Members without further delay.

In short, it is Class Counsel's considered opinion that the recovery from Defendants under this Settlement is fair and reasonable. Although Plaintiffs and Class Counsel would have obviously sought more in any trial, the value of the Settlement constitutes a substantial recovery under all of the circumstances. *Id*. Moreover, notwithstanding the confidence of Class Counsel in the merits of the Plaintiff's claims against Defendants, Class Counsel are cognizant that significant obstacles existed to both Class certification and a victory at trial. Defendants had arguments and potential defenses available to it at both stages. If Class certification was denied and that denial was affirmed on appeal, the value of

Plaintiffs' claims would have virtually extinguished.  *Id.* ¶ 37.  Some of

Defendants' arguments and defenses on liability include those reflected in Higher

One's pending motions to strike and to dismiss, as well as arguments that

Defendants could have presented to limit or restrict the potential damages

available to the Class even in the event of a judgment in its favor.  Under all of

these circumstances, the proposed Settlement Agreement is fair, reasonable, and

adequate.

       **c.**  <u>The Complexity, Expense and Likely Duration of the Litigation</u>

       "The expense and possible duration of the litigation are major factors to be

considered in evaluating the reasonableness of [a] settlement."  *Milstein v. Huck*,

600 F. Supp. 254, 267 (E.D.N.Y. 1984).  This Litigation involves many complex

legal issues relating to state consumer protection laws, and federal financial aid

law and regulation.  The costs and risks associated with litigating this Litigation

to a verdict, not to mention through the inevitable appeals, would have been high,

and the process would require many hours of the Court's time and resources.

Further, even in the event that the Class could recover a larger judgment after a

trial, the additional delay through trial, post-trial motions, and the appellate

process could deny the Class any recovery for years, further reducing its value.

*Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6

(S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further

costs [and] justice may be best served with a fair settlement today as opposed to

an uncertain future settlement or trial of the action."); *Strougo*, 258 F. Supp. 2d at

261 ("even if a shareholder or class member was willing to assume all the risks of

pursuing the actions through further litigation…the passage of time would

introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Because this sprawling and complex Litigation would have placed significant burdens on both Parties and the Court, this factor militates in favor of the Settlement.

### d. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. Apr. 1987). Moreover, the Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted). When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, the relief the Settlement Agreement provides for Class Members is outstanding. Higher One has agreed to create a Settlement Fund of $15 million to reimburse Class Members for OneAccount fees incurred during the Class Period, plus pay Notice and administration costs that will range from $1.3 to $2 million, and make meaningful practice changes valued at $66 million or more.

Plaintiffs' central claims concerned Higher One's inadequate disclosures of two of its fees: Non-Higher One ATM Fees and PIN-Based Transaction Fees.  If Plaintiffs were to prevail on their claims relating to those fees, the Settlement value to the class of $16.3 to $17 million—excluding the $66 million in value from the prospective relief—would amount to approximately 12% of the best possible damages award in this case.  Zavareei Decl. ¶¶ 24-25.  Plaintiffs would almost certainly face an argument by Defendants that even if the disclosures were *initially* inadequate, Class Members should have eventually been on notice of the fees after a reasonable amount of time, and after bank statements and other notices made the reality of the fees clear.  *Id.* ¶ 26.  If a factfinder agreed, best possible damages would be reduced accordingly.  In that case, Class Counsel believe the Settlement value would amount to approximately 20% of potential damages.  *Id.*  Of course, neither of these estimates account for the extremely valuable prospective relief discussed above, and both assume that Plaintiffs could prevail at all in this case.  As described in Section IV.A.2.b, the latter proposition is far from certain.

This recovery is well within the range of recovery routinely approved by courts in this circuit.  *See Cagan v. Anchor Sav. Bank FSB*, 1990 U.S. Dist. LEXIS 11450, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million settlement over objections that "bets possible recovery would be approximately $121 million."); *In Re AmBase Corp.,* 1995 U.S. Dist. LEXIS 15516 (S.D.N.Y. Oct. 20, 1995) (approving a settlement where class members received from 3% to 20% of their losses, calculated as if all damage issues were resolved in the class

members' favor).  *See also Weinberge v. Kendrick,* 689 F.2d 61, 65 (2d Cir. 1982)

(class action settlement approved as fair, reasonable, and adequate even where

"it is not disputed that the recovery will be only a negligible percentage of the

losses suffered by the class."); *Grinnell,* 495 F.2d at 455 ("The fact that a

proposed settlement may only amount to a fraction of the potential recovery does

not, in and of itself, mean that the proposed settlement is grossly inadequate and

should be disapproved.").

 Putting aside the extremely significant and carefully tailored non-economic

relief provided for in the Settlement (which has an approximate value of $66

million over relevant period), the $16.3-17.0 million estimated overall monetary

benefit conferred upon the Class represents a significant recovery, under all of

the circumstances and in light of the substantial risks of litigation on both the

merits and in connection with what surely would have been a contested Class

certification proceeding.  Zavareei Decl. at ¶ 38.  It also bears noting that the

Settlement represents a recovery in addition to and greater than the amount of

restitution $11 million separately obtained by the Federal Deposit Insurance

Corporation ("FDIC") in an enforcement action against Higher One.  *Id.* ¶ 39; *see

also* http://www.fdic.gov/news/news/press/2012/pr12092.html.

 As this Court recently explained in *In re Sturm, Ruger, & Company, Inc.

Securities Litigation*, No. 3:09-cv-1293 (VLB), 2012 WL 3589610 (Aug. 20, 2012)

(approving a 3.5% recovery of damages and noting that it was higher than the

typical recovery in similar class action settlement recoveries), "[i]n light of the

legal and factually complexity, the unpredictability of a lengthy trial and the

appellate process as discussed above, the settlement amount is well within the range of reasonableness for similar … cases." *Id*. at 21, *citing In re China Sunergy Sec. Litig.*, No. 07Civ.7895 (DAB), 2011 U.S. Dist. LEXIS 53007, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average settlement amounts in securities fraud class actions where investors sustained losses over the past decade ...have ranged from 3% to 7% of the class members' estimated losses"); *In re Union Carbide*, 718 F.Supp. 1099, 1103 (S.D.N.Y. 1989) (acknowledging that "a settlement can be approved even though the benefits amount to a small percentage of the recovery sought" and that the "essence of settlement is compromise.").  Here, in light of the novel issues present in this case, as well as the factual and legal complexity entailed in the prosecution and defense of this case and the unpredictability associated with class certification proceedings, a lengthy trial and any appellate proceedings (both under Fed.R.Civ.P. 23(f) and on the merits), Plaintiffs respectfully submit that the result achieved is excellent under all of the circumstances.

As the Proposed Settlement meets the requirements for final approval, it clearly is "within the range" of *possible* approval, and thus the Class should be notified and given the opportunity to evaluate the terms of the proposed Settlement.

**V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PLAN OF DISTRIBUTION AND ALLOCATION**

The claims process to be used in connection with this Settlement has been made as simple and burden-free as possible for Class Members who wish to receive a Settlement distribution.   The entirety of the Net Settlement Fund will be

34

allocated among Claimants, ensuring complete exhaustion of the Fund.  With the limited exception discussed above, no Settlement funds will revert to Higher One, and the Net Settlement Fund will be fully allocated among Claimants.  Settlement Agreement, ¶ 59.

Claims processes are routinely approved by courts reviewing class action settlements.  *See, e.g., Charron v. Wiener*, 731 F.3d 241, 253-254 (2d Cir. N.Y. 2013) (approving a class action settlement that used a claims process where claimants received differing amounts, or in some cases, nothing from the settlement because "[a]ll class settlements value some claims more highly than others, based on their perceived merits, and strike compromises based on probabilistic assessments");  *Norflet v. John Hancock Life Ins. Co.*, 658 F. Supp. 2d 350, 354 (D. Conn. 2009) (approving a settlement that used a claims process); *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 120 (S.D.N.Y. 2009) (approving a settlement that used a claim process); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 265, 279 (E.D.N.Y. 2009) (same); *In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 419 (W.D.N.Y. 1994) (same).

Here, each Electronic Notice will allow claim filing in a matter of seconds for what is largely a technology-savvy group of students and former students. For those Class Members who do not receive an Electronic Notice via email, the claims process has been made quick and easy as well.  Each Mailed Notice will contain an integrated, tear-off claim form that will be pre-populated with all relevant demographic information.  Schmidt Decl., ¶ 15.  A Class Member need only tear off the form, sign, and place in the mail.

Neither electronic nor hard-copy claim forms will require a Class Member to enter anything other than basic name, address, and other demographic information. *See e.g.,* Attachment 3 to Schmidt Decl., Proposed Mailed Notice.  A Class Member need <u>not</u> provide the number of OneAccount Fees, the date Fees were incurred, or any other information.  Instead, all claims payments will be automatically calculated based on the data in Higher One's business records, according to the plan of allocation discussed immediately above.  In sum, the claims process has been made as simple and user-friendly as possible, and is worthy of preliminary approval.

The plan of allocation is similarly fair and reasonable.  Courts grant preliminary approval of plans of allocation when they are "rationally related to the relative strengths and weaknesses of the respective claims asserted."  *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 2572937, at *2 (S.D.N.Y. Jun. 1, 2010) (quoting *Danieli v. IBM*, No. 08 Civ. 3688, 2009 WL 6583144 at *12-13 (S.D.N.Y. Nov.16, 2009)).  The proposed plan of allocation easily meets this standard.

The plan of allocation outlined above, and discussed more detail in the Settlement Agreement, treats Class Members fairly.  First, the plan of allocation relies upon accurate data maintained in Higher One's records regarding the number of, and type of, OneAccount fees charged to each Class Member. Zavareei Decl., ¶¶ 31-33.  Next, to the extent available in Higher One's business records, it accounts for refunds or credits already issued by Higher One to Class Members, to ensure that Class Members are not reimbursed twice for any

OneAccount Fees.  Next, the allocation formula, as described above, "weights" certain OneAccount Fees more heavily than others, based on (a) the Fee's relative importance to Plaintiffs' claims; and (b) the relative strength of legal claims based on a particular Fee.  Specifically, the allocation formula allows Class Members who submit a claim to receive credit for the full value of all Non-Higher One ATM Fees and PIN-Based Transaction Fees—the Fees at the center of this Litigation.  Other types of OneAccount Fees will be credited to Class Members who submit a claim at a reduced "weight."

Such weighing is permissible within the allocation context to ensure fairness. *See In re "Agent Orange" Product Liability* Litigation, 818 F.2d 179, 183 (2d Cir. 1987); *Friedman v. Union Bank of Switzerland (In Re Holocaust Victim Asset Litigation)*, 413 F.3d 183, 186 (2d Cir. 2001).  This ensures fair compensation is given for all OneAccount Fees to each Claimant.

Lastly, the allocation formula "caps" the amount of all other fees other than ATM and PIN Fees, which is appropriate because it will ensure that accountholders who knowingly and repeatedly engaged in behavior, such as overdraft of non-sufficient funds transactions do not disproportionally consume the benefits of the Settlement Fund.  Plaintiffs believe that this plan of allocation is fair and reasonable, and merits preliminary approval. Zavareei Decl., ¶ 36.

## VI.   THE PROPOSED CLASS MEETS THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23

One of this Court's functions in reviewing a proposed settlement of a class action is to determine whether the action may be maintained as a class action under Fed. R. Civ. P. 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 614

(1997).  Rule 23(a) sets forth four prerequisites to class certification referred to in the short-hand as: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation.  In addition, the Class must meet one of the three requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23.

A.     <u>Numerosity, Commonality and Typicality</u>

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3).  First, the number and location of putative Class Members is such that it is impractical to join all of the Class Members in one lawsuit.  *See Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) (certifying where the number of persons in the class logically exceeded 100).  Here, approximately 3.7 million accountholders are included in the Class.

Second, there are substantial questions of law and fact common to all Class Members, including, *inter alia* whether at least one Defendant:

a.     Automatically opens Higher One accounts on behalf of students and deposits financial aid refunds into such accounts without consent;

b.     Without students' consent, mails a pre-loaded, co-branded debit card and associated materials to students, falsely representing that Higher One is endorsed by, or is the preferred banking partner of, a student's college or university;

c.     Deceptively encourages students not to opt-out of their Higher One accounts without adequately disclosing the true nature of those accounts, including unconscionable and unusual usage fees;

  d. **Intentionally makes it difficult for students to opt-out of the Higher One account by failing to provide an online "direct deposit" option and otherwise delaying access to financial aid monies for students who choose to use other banking providers;**

  e. **Imposes contractual forms upon consumers only electronically, and only after a disbursement choice has been made, without providing consumers with the meaningful ability to review or approve the terms of those contracts prior to forcing a student to make a disbursement choice;**

  f. **Deceives students about, and do not adequately disclose, PIN Transaction Fees by, among other things, labeling the Higher One access device a "debit card" even though a student must use it as a "credit" card to avoid the fee;**

  g. **Does not provide means by which students can reasonably avoid PIN Transaction Fees;**

  h. **Violates the contract by charging, in effect, two service fees for every non-Higher One withdrawal;**

  i. **Does not provide means by which students can reasonably avoid non-Higher One ATM Transaction Fees;**

  j. **Requires their customers to enter into standardized account agreements which include unconscionable provisions;**

  k. **Violates DOE regulations and guidance;**

l.      Converts money belonging to Plaintiffs and other Members of the
        Class through their policies and practices;

m.      Is unjustly enriched through their policies and practices;

n.      Violates the consumer protection acts of Connecticut and/or various
        states through their policies and practices; and

o.      Violates the Electronic Funds Transfer Act and Regulation E.

Finally, Plaintiffs' claims are "typical" of other Class Members' claims
because they were subjected to a uniform set of policies and practices that
Higher One used for all accountholders.  Representative Plaintiffs' claims arise
from the same course of conduct as the other Class Members' claims.
Additionally, Plaintiffs and all other Class Members' claims are premised on the
same legal theories.  Accordingly, the typicality requirement is satisfied. *See In re
Host Am. Corp. Sec. Litig.,* Master File No. 05-CV-1250 (VLB), 2007 WL 3048865, at
*5 (D. Conn. Oct. 18, 2007) (Bryant, J.) (finding typicality where plaintiffs alleged
defendants committed the same acts, in the same manner against all class
members).

B.      Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Plaintiffs to
demonstrate that: (1) there is no conflict of interest between Plaintiffs and the
other Class Members; and (2) Class Counsel are qualified, experienced and
capable of conducting the Litigation.  *See In re AOL Time Warner ERISA
Litigation*, No. 02-8853, 2006 WL 2789862, at *3 (S.D.N.Y. Sept. 27, 2006).  Here,
Plaintiffs do not have any claims antagonistic to or in conflict with those of the

other Class Members, as Plaintiffs are pursuing the same legal theories as the rest of the Class relating to the same course of Defendants' conduct.

Additionally, Class Counsel have an extensive background in litigating complex litigation and consumer class actions, have been appointed class counsel in prior cases, and have the resources necessary to prosecute this action to its conclusion.  *See* Zavareei Decl., ¶¶ 40-43; Docket No. 8-2.  Indeed, this Court has already named Tycko & Zavareei LLP as Interim Lead Counsel in this case, based on just these factors.  *Id*. ¶ 3; *see also* Docket No. 16.

C.     <u>Predominance of Common Issues and Superiority</u>

Rule 23(b)(3) authorizes class actions to proceed where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *Id.*   "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve the economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness

or bringing about other undesirable results." *In re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 92 (D. Mass. 2005) (citing *AmchemProds.,* 521 U.S., at 615).  Where, as here, a court is deciding on the certification question in the context of a proposed class, questions regarding the manageability of the case for trial purposes do not have to be considered.  *Amchem*, 521 U.S. at 619.  The remaining elements or Rule 23, however, continue to apply in settlement-only certification situations.  *Id.* at 619*.*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *In re Lupron*, 228 F.R.D. at 91 (citing *Amchem*, 521 U.S. at 623).  "Rule 23(b)(3) does not require that *all* questions of law or fact be common; it only requires that the common questions *predominate* over individual questions."  *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981) (emphasis added); s*ee generally* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 4.21, 4.25 (1992).  As demonstrated *supra* when addressing commonality, several issues of law and fact common to all Class Members are present in this matter. These common issues of law and fact predominate over any potential individual issues which may arise, as they could be resolved through the presentment of proof common to all Class Members.  Thus, the predominance requirement of Rule 23(b)(3) is satisfied.

Additionally, the superiority requirement of Fed. R. Civ. P. 23(b)(3) is satisfied.  A class action is not only the most desirable, efficient, and convenient mechanism to resolve the claims of the Class, but it is almost certainly the only

fair and efficient means available to adjudicate such claims.  *See, e.g., Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available").  Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against Defendants given the comparatively small size of each individual Class Members' claims. Thus, it is desirable to adjudicate this matter as a class action.

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes in connection with the proposed Settlement.

## VII.   NOTICE

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23 (c)(2)(B).  *See also* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 8.2 at 162-65 (4th ed. 2002).  However, there are no "rigid rules" to apply when determining the adequacy of notice for a class action settlement; and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005).  Further, it is clearly established that "notice need not be perfect, but need be only the best

notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988), *cert. denied,* 488 U.S. 1005 (1989)).

The proposed Notice program satisfies all of these criteria and is in fact the best notice practicable.  As recited in the proposed Settlement and above, the Notice will (a) inform Class Members of the substantive terms of the Settlement, (b) advise Class Members on how to submit a claim (including the claim deadline for doing so), (c) advise Class Members of their options for opting-out or objecting to the Settlement, and (d) explain how to obtain additional information about the Settlement.  Moreover, the Notice program was designed and is being implemented by a leading notice firm, Rust Consulting.

Here, the Parties have agreed that virtually all Class Members, whether current or former customers of Higher One, will receive individual notice within 60 days of this Court's preliminary approval of the Settlement Agreement.  As discussed above, the Parties will employ Email Notice for those Class Members for whom Higher One maintains valid email addresses.  Settlement Agreement, ¶¶ 45-46.  For any Email Notice not successfully delivered to a Class Member (or where no valid email address exists), the Settlement Administrator will subsequently send, via First-Class Mail, a postcard notice to Class Members, using updated mailing address information.  *Id.* ¶ 47.

Courts regularly approve just such a process.  *See, e.g., In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) (email notice to all known addresses, and a hard copy mailing to persons who did not have an email address on file or where the email was returned as undeliverable); *Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006) (email notice sent to all available addresses, with a hard copy mailing sent to anyone who did not have an email address on file or where the email was returned as undeliverable).

These actions will ensure the vast majority all Class Members will receive individualized notice.  Schmidt Decl., ¶ 7.  In addition, the Settlement Administrator will place targeted internet advertising, *id*. ¶ 21; make available a Long-Form Notice on a Settlement Website, *id*. ¶ 22; create a Settlement Website with important information; and place into operation a toll-free telephone line.  *Id*. ¶ 23.

In her declaration, Kim Schmidt of Rust Consulting provides detailed information about the design and scope of the Notice program.  Schmidt Decl., ¶¶ 10-25.  Among other things, it will reach at least 90% of Class Members by direct email and mail.  *Id*. ¶ 7.  Therefore, the Court should approve the Notice program and the form and content of the Notices attached to the Schmidt Decl. as Attachments 2-5.

A.    **Contents of Notice**

The proposed Email Notice (including electronic claim form), Mailed Notice (including tear-off claim form), Long-Form Notice, and Published Notice are attached hereto.  The notices include a summary of settling Parties' respective litigation positions; the general terms of the Settlement as set forth in the Settlement Agreement; instructions for how to opt-out of or object to the Settlement; the process and instructions for making a claim; requested attorneys' fee and representative Plaintiff Service Awards; and the date, time, and place of the Final Fairness Hearing.  Schmidt Decl., ¶¶ 26-28.

The content of the proposed notice is more than sufficient because it "fairly apprise[s] the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2nd Cir. 1995) (internal quotations omitted).  The Notice will provide Class Members with information on the Class, the purpose and timing of the fairness hearing, opt-out procedures and deadlines, and the deadline and process for filing claims.  In addition, as discussed above, it will provide a telephone number and website that proposed Class Members may use to the extent they have any questions.  Schmidt Decl., ¶¶ 23-24.

1. **Opting Out**

The Notice clearly explains that any Member of the Class who wishes to opt out of the Class must timely submit written notice clearly manifesting his or her intent to be excluded from the Class to the designated Post Office box established for such purpose.  *See e.g.,* Attachment 5 to Schmidt Decl., Long-

form Notice.  Class Members will be provided with at least forty-five (45) days to submit requests to opt-out—and a large number of Class Members will be provided significantly more time.  Schmidt Decl,. ¶ 28.

### 2. Objecting

The Notices also clearly explain that any Member of the Class who wishes to object to the Settlement must timely file a written statement of objection with the Clerk of the Court and the Parties' counsel.  *Id.* ¶ 41.  Such objections must be postmarked no later than forty-five (45) days following the date the Notice program is completed.  *Id.,* Definition Z*.*  Class Members will be provided with at least forty-five (45) days to submit any objections—and a large number of Class Members will be provided significantly more time.  Schmidt Decl,. ¶ 28.  That is more than sufficient under applicable case law.  *See Maywalt v. Parker and Parsley Petroleum Co.,* 67 F.3d at 1079; *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1374-75 (9th Cir. 1993), *cert. denied sub nom.; Reilly v. Tucson Elec. Power Co.,* 512 U.S. 1220, 114 S. Ct. 2707, 129 L. Ed. 2d 834 (1994).

### 3. Scope of Notice

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the United States Supreme Court described the due process standard for notice as "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id.* at 314; *see also Shutts*, 472 U.S. at 812.  The proposed Notice is comprehensive and more than satisfies this standard, as it provides for Email or Mailed Notice to be provided directly to the vast majority of Class Members.

## VIII.   CONCLUSION

WHEREFORE, based on foregoing, Plaintiffs respectfully request that the

Court enter an Order:

(1) Preliminarily approving the Settlement as set forth in the
Settlement Agreement;

(2) Approving the Notice plan;

(3) Appointing Rust Consulting as Settlement Administrator;

(4) Certifying the Class for Settlement purposes;

(5) Appointing Brandi Crawford, Tarsha Crockett, Aisha DeClue,
Larry Forman, Rhonda Hannibal, Prince Kaywood, Gaynell
Kaywood, John Brandon Kent, Brianne Elizabeth Kent, Kristen
Krieg, Jonathan Lanham, Ashley Parker, and Jeanette Price as
Representative Plaintiffs;

(6) Appointing as Class Counsel Tycko & Zavareei, LLP,
Shepherd, Finkelman, Miller, & Shah, LLP, Gentle Turner
Sexton Debrosse & Harbison, and JonesWard PLC; and

(7) Scheduling a Final Fairness Hearing in this matter.

Plaintiffs respectfully submit the accompanying, proposed

Preliminary Approval Order for the Court's review and consideration.

Plaintiffs stand ready to provide any additional materials that the Court

may require to consider and preliminarily approve this Settlement.

Dated:  February 14, 2014                    Respectfully submitted:

/s/ Hassan A. Zavareei                    /s/Karen Leser-Grenon
Hassan A. Zavareei                          SHEPHERD FINKELMAN MILLER & SHAH LLP
TYCKO & ZAVAREEI LLP                    James E. Miller (ct21560)
Hassan A. Zavareei (*pro hac vice*)      Karen M. Leser-Grenon (ct23587)
Jeffrey D. Kaliel (*pro hac vice*)          65 Main Street
2000 L Street NW, Suite 808              Chester, CT 06412
Washington, DC 20036                      Telephone: (860) 526-1100

Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

*Interim Lead Counsel*

Facsimile: (866) 300-7367
jmiller@sfmslaw.com
kleser@sfmslaw.com

GENTLE TURNER SEXTON DEBROSSE &
HARBISON
Diandra Debrosse
501 Riverchase Parkway East
Suite 100
Hoover, AL 35244
Telephone: (205) 716-3000
Facsimile: (205) 716-3010
ddebrosse@gtandslaw.com

JONES WARD PLC
Jasper Ward
Alex Davis
312 S Fourth Street, 6th Floor
Louisville, KY 40202
Telephone (502) 882-6000
Facsimile: (502) 587-2007
jasper@jonesward.com
alex@jonesward.com

*Plaintiffs' Steering Committee*